**CAPSTEAD MORTGAGE CORPORATION,**
Appellant,

v.

**SUN AMERICA MORTGAGE CORPORATION,**
Appellee.

No. 07–99–0231–CV.

Court of Appeals of Texas, Amarillo.

March 8, 2001.

Fitzpatrick Hagood Fisher & Holmes PC (James A. Fisher), Dallas, for appellant.

Hoge Evans Holmes Carter & Ledbetter PLLC (Howard F. Carter, Jr.), Dallas, for appellee.

Before QUINN and REAVIS and JOHNSON, JJ.

REAVIS, Justice.

Presenting two issues, Capstead Mortgage Corporation challenges the trial court's order granting a traditional motion for summary judgment that it take nothing by its action against Sun America Mortgage Corporation based upon alleged defaults by Sun America under a Conventional Mortgage Loan Purchase and Sale Agreement. By its first issue, Capstead contends the trial court erred in granting summary judgment based on the doctrine of election of remedies. By its second issue, Capstead contends that summary judgment should not be affirmed on alternative grounds presented in Sun America's motion for summary judgment. Based upon the rationale expressed herein, we affirm.

Capstead and Sun America executed a mortgage purchase and sale agreement on March 11, 1992. By the agreement, Sun America made 31 express warranties and representations, including (1) the absence of usury, (2) the proceeds of the mortgage loan had been fully disbursed, and (3) the mortgage note and mortgage were genuine and that each was the valid obligation of the maker and enforceable in accordance with its terms.[1] Pursuant to the agreement, Sun America sold several mortgage

---

1. The contract did not make any reference to sections 3.416 and 3 .417 of the Texas Business and Commerce Code Annotated (Vernon 1994) regarding warranties on presentment and transfer and transfer warranties.

loans to Capstead, including one loan wherein Kadeem Omari was the mortgagor and maker of the mortgage note in the amount of $231,800.[2] The loan was made on November 2, 1994, and the loan was sold to Capstead before the first payment became due on January 1, 1995. Because Omari failed to pay the first and second installments, by letter of April 18, 1995, Capstead demanded that Sun America repurchase the loan.

Notwithstanding its demand to Sun America to repurchase the loan, because of Omari's default, Capstead also commenced foreclosure proceedings. Before Sun America responded to the demand of Capstead, the foreclosure was held on May 2, 1995. Capstead bid the remaining balance due and owing on the mortgage note, including foreclosure expenses, and the real estate was conveyed to Capstead as high bidder at the mortgage sale. Following the foreclosure, Capstead sold the property for less than the balance owing and then filed suit against Sun America.

As material here, Capstead asserted three causes of action, to-wit: (1) breach of duty to indemnify, (2) breach of duty to repurchase loan, and (3) breach of warranties. By its first amended motion for summary judgment, Sun America presented five grounds for its motion, to-wit: (1) the foreclosure extinguished the loan, (2) the loan was extinguished and Sun America had no obligation to repurchase the loan, (3) the repurchase obligation was discharged because rights to proceed against the maker of the note were impaired, (4) election of remedies, and (5) waiver/estoppel. Before we commence our consideration of Capstead's issues, we must first determine if the trial court's order signed

April 12, 1999 is a final judgment for purposes of appeal.

## Final Judgment

■ Initially, Capstead alleged six causes of action against Sun America based on claims arising out of two mortgage loans sold to Capstead. The first amended motion for summary judgment of Sun America addressed Capstead's claims as to both mortgage loans. The clerk's record demonstrates some uncertainty regarding partial dismissals of certain claims that prompted the granting of a new trial, the history of which is noted in the order entitled Final Partial Summary Judgment signed April 12, 1999. Even though the April 12, 1999 order recites that it is a partial summary judgment, because the clerk's record demonstrates that three claims on one mortgage note were non-suited, the order provides the motion for summary judgment was granted as to the remaining three claims arising out of the second mortgage loan. The order also contains a handwritten provision that "[a]s a result of the other orders signed on this date, this is a final judgment." Pursuant to *Lehmann, et al.* v. *Har–Con Corporation*, 44 Tex. Sup.Ct. J. 364, 39 S.W.3d 191 (2001), the April 12, 1999 order constitutes a final judgment.

## Summary Judgment Standard of Review

### Rule 166a(c)

■ In reviewing a summary judgment, this Court must apply the standards established in *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). A motion for summary judgment must state the specific grounds

---

2. Per the agreement, a mortgage loan was a conventional single family residential mortgage loan securing the payment of a note payable in equal monthly installments not to exceed thirty years.

therefor. Tex.R. Civ. P. 166a(c). For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. *Id.* A movant must either prove all essential elements of his claim, *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986), or negate at least one essential element of the non-movant's cause of action. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *Barbouti v. Hearst Corp.*, 927 S.W.2d 37, 64 (Tex. App.—Houston [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. *McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989). Where, as here,[3] the summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the

grounds presented in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Insurance Co. Of N. Am. v. Security Ins.*, 790 S.W.2d 407, 410 (Tex. App.—Houston [1st Dist.] 1990, no writit).

■ By its first issue, Capstead contends the foreclosure sale was not an election of remedies. We disagree because Capstead bid the entire balance of the mortgage note payable at the foreclosure sale and took title to the property. In *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 (Tex.1980), the Court recognized that the doctrine of election of remedies, although often criticized, survives in several branches of the law to prohibit inconsistent legal positions that may produce manifest injustice. Later, the Court applied the doctrine to bar an employee's intentional tort claim against his employer by his election of workers' compensation remedy. *See Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex.1996)

By definition, the contract provided that failure of the maker of the mortgage note to pay the first and second monthly payments constituted a "defect." Section 2.03 of the contract entitled "Repurchase of Mortgage Loans by Seller; Indemnification" provided in part that Sun America would promptly cure such breach or defect or repurchase the affected mortgage loan. The last paragraph of Section 2.03 also provided:

> In addition to such repurchase obligation, Seller shall indemnify Buyer and hold it harmless against any loss, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and other costs and expenses resulting from

**3.** Because Capstead asserted three separate causes of action, the absence of specificity in the order signed April 12, 1999 regarding the three claims and the reference to election of remedies, without referring to the other grounds for summary judgment, we conclude, for purposes of our review, that the order of April 12, 1999 does not specify or state the grounds relied on.

any claim, demand, defense or assertion based on or grounded upon, or resulting from, (i) a breach of Seller's representations and warranties contained in this Agreement or (ii) a Defect.

■ In appropriate situations, Texas case law recognizes that a duty to repurchase commercial paper against a seller is subject to enforcement. *Vandergriff Chevrolet Co., Inc. v. Forum Bank*, 613 S.W.2d 68, 70 (Tex.Civ.App.—Fort Worth 1981, no writ). However, in *Vandergriff*, the obligor's contract had not been discharged or extinguished when enforcement of the repurchase obligation was sought. Capstead does not contend that the maker's obligation on the mortgage note survived the foreclosure, and indeed, by its response to request for admissions, Capstead admitted that the subject mortgage note was extinguished as a result of the foreclosure sale where Capstead bid the entire balance owing on the note and took title to the real estate.

Sun America contended that Capstead's action of bidding the balance owing on the note thereby extinguishing the mortgage note and taking title to the collateral constituted an election of remedies. Relying on *Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 491 S.W.2d 869 (Tex.1973), Capstead argues that its recovery is not barred by an election of remedies. However, based on *Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863 (Tex.1977), we conclude that the foreclosure bid constituted an election of remedies by Capstead. In *Huckabee*, the Court reversed a decision of the court of appeals applying Capstead's version of the rule announced in *Custom Leasing. Id.* at 865. As applicable here, *Huckabee*, specifically held that because the homeowners received settlement benefits from their suit against American States, the election rule should have been applied to preclude suit against

Lomas & Nettleton. *Huckabee*, 558 S.W.2d at 864. Based upon our analysis, Capstead's first issue is overruled.

■ By its second issue, Capstead contends the summary judgment cannot be affirmed on the alternative grounds asserted by Sun America. Although Capstead addresses some of the alternative grounds presented by Sun America's motion, it does not address the ground that Sun America had no obligation because the foreclosure extinguished the loan.

Sections 2.01 and 2.02 of the contract contain the 31 warranties and representations generally discussed above. The first portion of Section 2.03 of the contract provides in part as follows:

> It is understood and agreed that the representations and warranties set forth in Section (sic) 2.01 and 2.02 shall *survive and continue in force for the full remaining life of each Mortgage Loan.*
> . . .

(Emphasis added). Under this provision, if, for example claims of usury or forgery had been made and established by the maker of the mortgage note during the "life of the Mortgage Loan," as demonstrated by *Vandergriff*, 613 S.W.2d at 70–71, Capstead would have been entitled to recourse against Sun America under Section 2.03.

The term "Mortgage Loan" is defined as a conventional single family residential mortgage loan which is subject to the agreement. Although the contract defines 35 terms, it does not define "life of the Mortgage Loan." By its answer to request for admissions, Capstead admitted that:

- it purchased the property at the foreclosure sale on May 2, 1995;
- the collateral was transferred to it as a result of the foreclosure sale;
- the foreclosure satisfied the entire amount of principal and interest on the subject loan;

- the mortgage note "was extinguished" as a result of the foreclosure.

These admissions establish that the mortgage loan ceased to exist upon foreclosure, and as a result, the warranties and representations set forth in Sections 2.01 and 2.02 ceased to continue in force. Because this ground was not addressed by Capstead, we need not address the other grounds and overrule Capstead's second issue.

Further, because the judgment of the trial court does not state the grounds as to all of Capstead's claims and this ground for the motion for summary judgment was not addressed by Capstead, even if our analysis of the election of remedies issue should be incorrect, we affirm the judgment. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *see also Holloway v. Starnes,* 840 S.W.2d 14, 18 (Tex.App.—Dallas 1992, writ denied); *Tindle v. Jackson Nat. Life Ins. Co.,* 837 S.W.2d 795, 798 (Tex.App.—Dallas 1992, no writ).

Accordingly, the judgment of the trial court is affirmed.