# NO. 12-09-00283-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE GLIDDEN COMPANY d/b/a ICI PAINTS, APPELLANT/ CROSS-APPELLEE* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *CDNE, INC. d/b/a ALL PRO SERVICES, APPELLEE/CROSS-APPELLANT* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

The Glidden Company d/b/a ICI Paints appeals the trial court's judgment and award of $189,739.93 entered in favor of CDNE, Inc. d/b/a All Pro Services and an award of attorney's fees of $118,000.00. All Pro cross-appeals the trial court's judgment and award of $71,218.65 entered in favor of Glidden. Glidden raises four issues on appeal. All Pro raises three issues in its cross-appeal. We reverse and remand in part and affirm in part.

## BACKGROUND

All Pro was awarded a contract to paint a new Wal-Mart Super Center in Tyler, Texas. All Pro purchased "1582" paint from Glidden for the Wal-Mart job, which it commenced on June 2, 2006. By the next day, it became apparent that the 1582 paint was defective, and All Pro notified Glidden about the failed paint.

Glidden immediately acknowledged that the 1582 paint had failed and began testing a replacement product. On June 15, 2006, Glidden delivered a replacement paint to All Pro at the job site. However, before All Pro began to apply the replacement paint, it insisted that Glidden agree in writing to pay for the remediation work that was necessary because of the failed 1582 paint.

On June 16, 2006, Jim Echols, All Pro's attorney, and Mike Brooks, Glidden's regional sales manager, exchanged the following e-mails, which constitute the parties' agreement (the 1582 Agreement):

1

----Original Message----
From: [Jim Echols]
Sent: 06/16/2006 06:54 PM
To: [All Pro Services]
Cc: Mike Brooks
Subject: Re: Walmart Super Center; Tyler, TX All Pro Paint

ICI agrees to the org proposal as amended as follows, to wit:

1) ICI will wire transfer $30,000 to All Pro Services: provide All Pro $30,000 immediate credit for invoices on the Walmart Tyler, Tx job; and give All Pro a credit of $13,000 for product on any future job. This consideration to be pd for the time, materials, labor, equipmt, and other remediation expense incurred by All Pro (through 6/15/06) resulting from the failure of ICI's dry-fall product on the Walmart Tyler job, and for any loss of future opportunity cost which may result therefrom.
2) ICI will also fully re-emburse[sic] All Pro for any future costs associated with the continued remediation and preparation for application of dry-fall product, and the additional cost associated with time, overhead, equipment, labor, material, other expenses above and beyond the costs which would have been incurred by All Pro in completeing[sic] the Walmart Tyler job, had there not been a product failure. These costs are to be documented weekly and presented to ICI. ICI agrees to provide immediate payment of these expenses in cash and not in additional credit. The documentation required to be provided by All Pro will be in a form generally explaning[sic] the nature and the extent of the expenses.
Items #2 and #3 of the org proposal remains the same.

If this is your agreement please indicate by your return e-mail.


Org proposal:
        #1  ICI immediately wire transfer $61,000 into All Pro's acct to help cover All Pro's additional out of pocket expenses to date;
        #2  All Pro test the new paint under the supervision of a ICI rep and Gen Contractor Ledcor:
        #3  ICI agrees to indemnify and hold harmless All Pro and Ledcor for any failures that may occur with the new product;
        #4  ICI agrees to re-emburse[sic] All Pro for all of its additional damages and expenses incurred as a result of this incident.


  From: [Mike Brooks]
    To: [Jim Echols], [All Pro Services]
    Cc: [Bill Krueger]
Subject: Re: Walmart Supper Center; Tyler, TX All Pro Paint
  Date: Fri, 16 Jun 2006 23:22:37 +0000


Chris and I talked. We are good with this proposal as long as we document expenses.

All Pro began applying the replacement paint on June 17, 2006, and the project was ultimately completed to Wal-Mart's satisfaction. Glidden, who had not charged All Pro for the failed paint, billed All Pro for the replacement paint. All Pro did not pay, but instead, billed Glidden for its remediation work pursuant to the 1582 Agreement. Glidden, likewise, did not pay.

2

On July 10, 2007, Glidden filed suit against All Pro for the materials it furnished. All Pro filed a counterclaim for services rendered under the 1582 Agreement. Following a bench trial, the trial court entered judgment for Glidden and awarded it $71,218.65 in damages. The trial court also entered judgment in All Pro's favor on its counterclaim and awarded it $189,739.93 in damages and $118,000.00 in attorney's fees. Thereafter, the trial court entered findings of fact and conclusions of law. Glidden and All Pro timely filed their respective appeal and cross-appeal.

**INTERPRETATION OF THE 1582 AGREEMENT**

In its first issue, Glidden argues the trial court's award to All Pro was erroneous because it was improperly based on All Pro's time and materials (T&M) rates of $32.50 per hour, which Glidden was not obligated to pay under the terms of the 1582 Agreement. Specifically, Glidden contends that the agreement provides only that All Pro is entitled to be reimbursed for its actual out of pocket costs. All Pro responds that a reasonable interpretation of the agreement is that it was entitled to be reimbursed at its $32.50 per hour T&M rate.

**Applicable Law**

Whether a contract is ambiguous is an issue of law, which we review de novo. *See* *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008); *see also* *Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009) (court can consider issue of contractual ambiguity sua sponte). Our primary concern in interpreting a contract is ascertaining the true intent of the parties. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *XCO Production Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.–Houston [14th Dist.] 2006, pet. denied). We examine the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Jamison*, 194 S.W.3d at 627. We presume that the parties to a contract intend every clause to have some effect. *Heritage Res.*, 939 S.W.2d at 121. We give terms their plain, ordinary, and generally accepted meaning unless the contract shows the parties used them in a technical or different sense. *Id.*

A contract is not ambiguous if it can be given a certain or definite meaning as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Lack of clarity does not create an ambiguity. *Universal Health Servs.*, 121 S.W.3d at 746; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). Further, a contract is not ambiguous simply because the parties advance conflicting interpretations. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *Forbau*, 876 S.W.2d at 134. Rather, a contract is

3

ambiguous if it is subject to two or more reasonable interpretations after applying the pertinent rules of construction. *Universal Health Servs.*, 121 S.W.3d at 746; *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589. If a contract is ambiguous, a fact issue exists on the parties' intent. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589.

In determining whether a contract is ambiguous, we look to the contract as a whole, in light of the circumstances present when the contract was executed. *Jamison*, 194 S.W.3d at 627; *see also Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 561 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) ("We construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served."). These circumstances include the commonly understood meaning in the industry of a specialized term, which may be proven by extrinsic evidence such as expert testimony or reference material. *Jamison*, 194 S.W.3d at 627–28.

## Contractual Construction

In the instant case, the parties' agreement set forth, in pertinent part, as follows:

> ICI will also fully [reimburse] All Pro for any future *costs* associated with the continued remediation and preparation for application of dry-fall product, and the additional *cost* associated with time, overhead, equipment, labor, material, other expenses above and beyond the *costs* which would have been incurred by All Pro in [completing] the Walmart Tyler job, had there not been a product failure.

(emphasis added). Glidden argues that the agreement required only that it pay All Pro for the actual hourly wage All Pro paid its workers because the agreement requires only that it "reimburse" All Pro for remediation costs. All Pro contends that Glidden's interpretation fails to take into account the remaining language of the agreement, particularly the reference to "additional cost" associated with completing the job.

"Reimburse" means "to pay back or compensate (a person) for money spent or losses or damages incurred." *See* THE AMERICAN HERITAGE DICTIONARY 1042 (2d College Ed. 1982). Here, Glidden agreed to reimburse All Pro's "costs" associated with remediation and completion of the job. Thus, we must determine if the word "cost" is ambiguous.

"Cost" means either "an amount paid or required in payment for a purchase price" or "a loss, sacrifice, or penalty; [a] detriment." *See* THE AMERICAN HERITAGE DICTIONARY 329 (2d College Ed. 1982). These varying definitions of "cost" from the narrow "amount paid" meaning to the broad "loss" or "detriment" meaning make less plain the intent of the parties as expressed through the language of their agreement. The parties could have intended the term "costs" to be understood by the more narrow meaning of the "amount paid" by All Pro. Yet, when we consider the surrounding language and discern what might comprise "additional cost associated with time, overhead, equipment, labor, material, and other expenses," the more broad definition

4

of "cost" becomes an equally reasonable expression of what may have been the parties' intent. It is conceivable that this more broad notion of "cost" could include losses associated with, among other things, rates All Pro could have charged on another job had it not been required to perform remediation and reapplication work on the Wal-Mart job. Therefore, considering the range of meanings for the word "cost," it is reasonable to conclude that the "costs" to which the agreement refers might include all costs associated with labor, which could be charged at a higher rate than All Pro's out of pocket costs. Having considered the plain language of the agreement, we conclude that the term "costs" is reasonably susceptible to more than one meaning. *See Universal Health Servs.*, 121 S.W.3d at 746. Accordingly, we hold that the parties' agreement is ambiguous.

**Parol Evidence**

Having determined that the agreement is ambiguous, we now consider any parol evidence of record to determine the parties' intent. *See Edascio, L.L.C. v. NextiraOne, L.L.C.*, 264 S.W.3d 786, 796 (Tex. App.–Houston [1st Dist.] 2008, pet. denied). The first paragraph of the agreement concerns Glidden's reimbursement of All Pro's remediation expenses[1] through June 15, 2006. On June 16, 2006, Echols sent an email to Brooks, to which he attached an invoice setting forth All Pro's expenses incurred from June 2, 2006 through June 15, 2006 in correcting the problems on the Wal-Mart job.[2] The invoice calculated labor expenses at a rate of $32.50 per hour.[3] Brooks conceded at trial that he had received this invoice. Thus, the evidence reflects that when it was negotiating what ultimately would become the terms of the first paragraph of the 1582 Agreement, Glidden had before it documentation reflecting that All Pro's remediation expenses were calculated at a rate of $32.50 per hour. Glidden's subsequent acquiescence to the terms of the first paragraph of the agreement, in which it agreed to pay All Pro's remediation expenses, is some evidence of the parties' intent that All Pro's costs that Glidden agreed to reimburse under the second paragraph of the agreement would be calculated using the same rate. Accordingly, we hold that the evidence supports the trial court's interpretation of the 1582 Agreement that the parties intended that the intended rate of reimbursement to All Pro was $32.50 per hour. Glidden's first issue is overruled.

---

[1] Similar to "cost," the term "expense" has both narrow and broad meanings. "Expense" means either "[s]omething paid out … to accomplish a purpose" or "[s]omething given up for the sake of something else" or "sacrifice." *See* THE AMERICAN HERITAGE DICTIONARY 477 (2d College Ed. 1982).

[2] In his email, Echols stated that these remediation expenses "include real out of pocket monies spent by All Pro." However, Echols did not limit All Pro's remediation expenses to these "out of pocket monies."

[3] The $32.50 labor rate in the first invoice is not labeled as a T&M rate. However, a subsequent invoice was submitted by All Pro to Glidden, which chronicled All Pro's costs under the heading "T&M Summary" and set forth the rate for labor as $32.50 per hour.

5

In its second issue, Glidden argues that the evidence is not legally sufficient to support the trial court's award to All Pro to the extent it was based on overtime labor charges because All Pro did not pay its employees overtime or regular time wages for working more than forty hours per week.

## Evidentiary Sufficiency

In an appeal from a bench trial, a trial court's findings of fact "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 795 (Tex. 1991). A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a party's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When a trial court enters findings of fact and conclusions of law, we "indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.–Houston [14th Dist.] 1999, pet. denied). In conducting our review, we are mindful that the factfinder was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the factfinder. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When the party who had the burden of proof at trial attacks the legal sufficiency of an adverse finding, the party must show that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 45 S.W.3d 237, 241 (Tex. 2001). In our review, we first examine the record for evidence supporting the adverse finding, crediting favorable evidence, if a reasonable jury could, and disregarding evidence to the contrary, unless a reasonable jury could not. *City of Emory v. Lusk*, 278 S.W.3d 77, 84 (Tex. App.–Tyler 2009, no pet.). If there is no evidence to support the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.,* 46 S.W.3d at 241. We will sustain the issue only if the contrary proposition is conclusively established. *Id.* The matter is conclusively established only if reasonable people could not differ in their conclusions. *City of Keller*, 168 S.W.3d at 816.

We review de novo the trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment.

*See id.* Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Raman Chandler Property v. Caldwell's Creek*, 178 S.W.3d 384, 396 (Tex. App.–Fort Worth 2005, pet. denied).

In the case at hand, we have previously held that the term "costs" in the 1582 Agreement is ambiguous and have considered parol evidence, specifically the first invoice All Pro sent to Glidden during the parties' negotiations, to determine the parties' contractual intent. Considering further the language contained in the first invoice, we note the language underneath the listing of total labor expenses calculated at the $32.50 per hour rate, which states "[n]ot including overtime[.]" Analyzing the effect of this first invoice in a similar fashion to our analysis above, we conclude that there is some evidence that the parties intended for All Pro to be reimbursed for labor at overtime rates.

Chris Norris, vice president of All Pro, testified that it was standard practice in the construction industry that all work performed on nights or weekends was billed using overtime rates. Norris further testified that All Pro's billing practice was to charge time-and-a-half for work performed on nights or weekends. Norris confirmed that the "not including overtime" notation on the first invoice was intended to convey to Glidden that it could be charged an overtime rate. Terry Westmoreland, the Glidden sales representative who monitored the job, confirmed in his testimony that much of the work was being done during what would be considered overtime hours in the industry. Finally, the "Additional Work Order T&M Summary," which covered work done from June 16, 2006 through June 21, 2006, sets forth that 505.5 man hours were spent on the job at the overtime rate of $48.75 per hour, one and one-half times the $32.50 per hour rate. Accordingly, we hold that there is legally sufficient evidence to support the trial court's award to the extent that the award was based on billed overtime wages. Glidden's second issue is overruled.

## Finding of Illegal and/or Fraudulent Conduct

In its third issue, Glidden contends that the trial court's award to All Pro was erroneous to the extent it was based on overtime labor charges because the trial court also found that All Pro acted illegally and/or fraudulently by not paying its employees lawfully prescribed overtime wages.

Courts will not aid a party in carrying out a fraud. *LaForce v. Bracken*, 141 Tex. 18, 21, 169 S.W.2d 465, 467 (1943). In support of its proposition, Glidden cites *Bracken*, *Grant v. Laughlin Environmental, Inc.*, No. 01-07-00227-CV, 2009 WL 793638 (Tex. App.–Houston [1st Dist.] 2009, no pet.) (mem. op. on reh'g), and *De La Penza v. Elizinga*, 980 S.W.2d 920 (Tex. App.–Corpus Christi 1998, no pet.). Each of these cases concerns disputes between parties to contracts. However, Glidden has cited no authority, nor are we aware of any authority,

7

holding that illegal or fraudulent conduct by a party to a contract toward a nonparty serves to negate the contractual obligations of the other party to the contract. All Pro's laborers were not parties to the 1582 Agreement. Therefore, any improper activity found by the trial court to have been committed by All Pro with regard to its payment of its laborers was not relevant to the parties' obligations under the 1582 Agreement.

A finding of fact or conclusion of law made by the trial court that is immaterial and not at issue in the case cannot present reversible error. *Wiley v. Baker*, 597 S.W.2d 3, 6 (Tex. Civ. App.–Tyler 1980, no writ); *see also Cook Co. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.–Fort Worth 2004, no pet.). In the instant case, the trial court's finding that All Pro failed to pay its laborers overtime wages is immaterial because it is not relevant to the parties' obligations under the 1582 Agreement. Accordingly, we hold that this finding does not undermine the trial court's award of damages to All Pro. *See* TEX. R. APP. P. 44.1(a)(1). Glidden's third issue is overruled.

## GLIDDEN'S ATTORNEY'S FEES

In its fourth issue, Glidden contends that the trial court erred in failing to award it the attorney's fees it expended in recovering the $71,218.95 for the cost of the materials it furnished to All Pro. All Pro responds that Glidden cannot recover attorney's fees because it did not receive a net recovery due to the trial court's $189,739.93 award to All Pro.

Whether a party is entitled to recover attorney's fees is a question of law, which we review de novo. *See Holland v. Wal-Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex. 1999). Attorney's fees are not recoverable unless allowed by statute or by contract. *Id.* To obtain an award of attorney's fees under section 38.001 of the civil practice and remedies code, a party must (1) prevail on a cause of action for which attorney's fees are recoverable and (2) recover damages. *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). A party requesting attorney's fees under section 38.001 need not obtain a net recovery to be entitled to recover its attorney's fees. *See Imperial Lofts, Ltd. v. Imperial Woodworks*, 245 S.W.3d 1, 7 (Tex. App.–Waco 2007, pet. denied) (citing *McKindley*, 685 S.W.2d at 10–11).

Here, the trial court awarded Glidden $71,218.95 for the materials that it furnished to All Pro for the Wal-Mart Super Center job. Accordingly, we hold that Glidden was entitled to recover its reasonable attorney's fees for successfully prosecuting this claim. *See* TEX. CIV. PRAC. REM. CODE ANN. § 38.001(3) (Vernon 2008); *Imperial Woodworks*, 245 S.W.3d at 7. Glidden's fourth issue is sustained.

## DISCLAIMER OF CONSEQUENTIAL DAMAGES

In its first cross-issue, All Pro contends that the trial court erred when it did not award $42,865.00 in lost profits against Glidden because of two contracts it was unable to perform due to the remediation work it agreed to do for Glidden under the 1582 Agreement. Glidden responds that it had a disclaimer in its terms and conditions set forth in its invoice, which limited its liability to All Pro for lost profits or consequential damages. It further contends no language in the 1582 Agreement could be interpreted to allow the recovery of lost profits.

Westmoreland specified that he had, as the sales representative of Glidden, dealt with Norris since 1997. Westmoreland further stated that the terms and conditions section of the invoice for all of the sales from that time forward, including the sale of the 1582 paint, contained a disclaimer of any consequential damages. Norris acknowledged that he had received this disclaimer from Westmoreland when he purchased the 1582 paint from Glidden. However, All Pro contends that the language in these disclaimers, although in writing, was not conspicuous. *See* TEX. BUS. & COM. CODE ANN. § 2.316(b) (Vernon 2002).

Profits lost on other contracts resulting from the breach of a contract may be classified as "indirect" or consequential damages. ***Mood v. Kronos Products, Inc.***, 245 S.W.3d 8, 12 (Tex. App.–Dallas 2007, pet. denied). Consequential damages can be disclaimed. *See **Morgan Buildings and Spas, Inc. v. Humane Society of Southeast Texas***, 249 S.W.3d 480, 490 (Tex. App.–Beaumont 2008, no pet.); *see also* TEX. BUS. & COM. CODE ANN. § 2.316(b) (Vernon 2009). Conspicuousness in a disclaimer is not required if the buyer has actual knowledge of it. ***Womco, Inc. v. Navistar Intern. Corp.***, 84 S.W.3d 272, 279 (Tex. App.–Tyler 2002, pet. denied); *see also **Cate v. Dover Corp.***, 790 S.W.2d 559, 561 (Tex. 1990) ("Inconspicuous language is immaterial when the buyer has actual knowledge of the disclaimer."). This knowledge can result from the buyer's prior dealings with the seller. ***Id.***

Here, the record reflects that Glidden and All Pro had been dealing with each other for nine years. There is also evidence that the disclaimer of these consequential damages remained the same throughout the course of dealing between the two parties. It was, therefore, unnecessary for the language in Glidden's disclaimer of the consequential damages to be conspicuous for it to be effective. Further, there was no language in the second paragraph of the 1582 Agreement such as "future opportunity costs," "lost profits," or "consequential damages" that would have allowed the trial court to find this disclaimer to be ineffective. Thus, we hold that Glidden effectively disclaimed any consequential damages All Pro may have had as a result of the failure of the 1582 paint. All Pro's first cross-issue is overruled.

## COST OF REPLACEMENT PAINT

In its second cross-issue, All Pro contends that Glidden represented to it that the replacement paint it furnished would be free and without charge. Norris testified that on June 8, 2006, Westmoreland told him that there would be no charge for the replacement paint. Westmoreland denied that he ever had a discussion with Norris regarding the replacement paint's being free. In fact, Westmoreland testified that Norris told him he would not deal with him on the paint failure because he wanted something in writing from someone with more authority in the Glidden hierarchy.

In a bench trial, the trial court has the right to accept or reject any part of a witness's testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713 (Tex. App.–San Antonio 2007, no pet.). The court may believe one witness and disbelieve others. *Id*. As is apparent from the trial court's findings of fact, the trial court determined that Westmoreland made no representation to Norris that the paint would be free. All Pro's second cross-issue is overruled.

### REASONABLE ATTORNEY'S FEES FOR ALL PRO

In its third cross-issue, All Pro contends that the trial court erred in failing to award it the entirety of the $148,000.00 in attorney's fees that it sought, and to which Glidden had not objected at trial. Glidden responds that the trial court had the authority to determine the reasonableness of All Pro's attorney's fees and that its award of $118,000.00 in attorney's fees under the 1582 Agreement should be upheld.

Reasonableness of attorney's fees is ordinarily left to the factfinder, and the reviewing court may not substitute its judgment for that of the factfinder*. See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). In awarding attorney's fees, the trial court, as the trier of fact, must take into account various factors such as the nature and complexity of the case, the nature of the services provided by counsel, the time required for trial, the amount of money involved, the client's interest that is at stake, the responsibility imposed upon counsel, and the skill and expertise required. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). Ordinarily, the allowance of attorney's fees rests within the sound discretion of the trial court and will not be reversed without a showing of abuse of that discretion. *Id.* An agreement to pay unspecified attorney's fees implies payment of a reasonable fee for the attorney's services. *Kurtz v. Kurtz*, 158 S.W.3d 12, 18 (Tex. App.–Dallas 2004, pet. denied).

In the instant case, it was within the trial court's discretion to determine what would be a reasonable attorney's fee award to All Pro. We will not substitute our judgment for that of the trial court. Therefore, we hold the trial court did not abuse its discretion in awarding an amount of attorney's fees less than the amount All Pro sought. All Pro's third cross-issue is overruled.

<u>CONCLUSION</u>

We have overruled Glidden's first, second, and third issues as well as All Pro's first, second, and third cross-issues. Further, we have sustained Glidden's fourth issue. Accordingly, we *reverse* the trial court's judgment in part and *remand* the cause to the trial court for the consideration of reasonable and necessary attorney's fees for Glidden's breach of contract claim.[4] We *affirm* the remainder of the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 28, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[4] *See* TEX. R. APP. 44.1(b); *see also* **Brown v. Traylor**, 210 S.W.3d 648, 659–60 (Tex. App.–Houston [1st Dist.] 2006, no pet.).

11