NO. 12-09-00283-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE GLIDDEN COMPANY d/b/a                
§                   APPEAL FROM THE 7TH

ICI PAINTS, APPELLANT/

CROSS-APPELLEE

            

V.                                                                      
§                   JUDICIAL DISTRICT COURT OF

 

 

CDNE, INC. d/b/a ALL PRO
SERVICES,

APPELLEE/CROSS-APPELLANT                          
§                   SMITH COUNTY, TEXAS   







MEMORANDUM
OPINION

            The Glidden
Company d/b/a ICI Paints appeals the trial court’s judgment and award of
$189,739.93 entered in favor of CDNE, Inc. d/b/a All Pro Services and an award
of attorney’s fees of $118,000.00.  All Pro cross-appeals the trial court’s
judgment and award of $71,218.65 entered in favor of Glidden.  Glidden raises
four issues on appeal.  All Pro raises three issues in its cross-appeal.  We
reverse and remand in part and affirm in part.

 

Background

            All
Pro was awarded a contract to paint a new Wal-Mart Super Center in Tyler, Texas. 
All Pro purchased “1582” paint from Glidden for the Wal-Mart job, which it commenced
on June 2, 2006.  By the next day, it became apparent that the 1582 paint was
defective, and  All Pro notified Glidden about the failed paint.

            Glidden
immediately acknowledged that the 1582 paint had failed and began testing a
replacement product.  On June 15, 2006, Glidden delivered a replacement paint to
All Pro at the job site.  However, before All Pro began to apply the
replacement paint, it insisted that Glidden agree in writing to pay for the
remediation work that was necessary because of the failed 1582 paint.

            On
June 16, 2006, Jim Echols, All Pro’s attorney, and Mike Brooks, Glidden’s
regional sales manager, exchanged the following e-mails, which constitute the
parties’ agreement (the 1582 Agreement):

 

----Original Message----

From:  [Jim Echols]

Sent:  06/16/2006  06:54 PM

To:  [All Pro Services]

Cc:  Mike Brooks

Subject:  Re:  Walmart Super Center; Tyler, TX  All
Pro Paint

 

ICI agrees to the org proposal as amended as follows,
to wit:

 

1) ICI will wire transfer $30,000 to All Pro
Services:  provide All Pro $30,000 immediate credit for invoices on the Walmart
Tyler, Tx job; and give All Pro a credit of $13,000 for product on any future
job.  This consideration to be pd for the time, materials, labor, equipmt, and
other remediation expense incurred by All Pro (through 6/15/06) resulting from
the failure of ICI’s dry-fall product on the Walmart Tyler job, and for any
loss of future opportunity cost which may result therefrom.

2) ICI will also fully re-emburse[sic] All Pro for any
future costs associated with the continued remediation and preparation for
application of dry-fall product, and the additional cost associated with time,
overhead, equipment, labor, material, other expenses above and beyond the costs
which would have been incurred by All Pro in completeing[sic] the Walmart Tyler
job, had there not been a product failure.  These costs are to be documented
weekly and presented to ICI.  ICI agrees to provide immediate payment of these
expenses in cash and not in additional credit.  The documentation required to
be provided by All Pro will be in a form generally explaning[sic] the nature
and the extent of the expenses.

Items #2 and #3 of the org proposal remains the same.

 

If this is your agreement please indicate by your
return e-mail.

 

 

 

Org proposal:

                #1  ICI immediately wire transfer
$61,000 into All Pro’s acct to help cover All Pro’s additional out of pocket
expenses to date;

                #2  All Pro test the new paint under
the supervision of a ICI rep and Gen Contractor Ledcor:

                #3  ICI agrees to indemnify and hold
harmless All Pro and Ledcor for any failures that may occur with the new
product;

                #4  ICI agrees to re-emburse[sic] All
Pro for all of its additional damages and expenses incurred as a result of this
incident.

 

 

    From:  [Mike Brooks]

        To:  [Jim Echols], [All Pro Services]

        Cc:  [Bill Krueger] 

Subject:  Re:  Walmart Supper Center; Tyler, TX  All
Pro Paint

     Date:  Fri, 16 Jun 2006 23:22:37 +0000

 

 

Chris and I talked.  We are good with this proposal as
long as we document expenses.

 

            All
Pro began applying the replacement paint on June 17, 2006, and the project was ultimately
completed to Wal-Mart’s satisfaction.  Glidden, who had not charged All Pro for
the failed paint, billed All Pro for the replacement paint.  All Pro did not
pay, but instead, billed Glidden for its remediation work pursuant to the 1582
Agreement.  Glidden, likewise, did not pay.  

            On July
10, 2007, Glidden filed suit against All Pro for the materials it furnished. 
All Pro filed a counterclaim for services rendered under the 1582 Agreement.  Following
a bench trial, the trial court entered judgment for Glidden and awarded it $71,218.65
in damages.  The trial court also entered judgment in All Pro’s favor on its
counterclaim and awarded it $189,739.93 in damages and $118,000.00 in
attorney’s fees.  Thereafter, the trial court entered findings of fact and
conclusions of law.  Glidden and All Pro timely filed their respective appeal
and cross-appeal.

 

Interpretation of the 1582 Agreement

            In
its first issue, Glidden argues the trial court’s award to All Pro was erroneous
because it was improperly based on All Pro’s time and materials (T&M) rates
of $32.50 per hour, which Glidden was not obligated to pay under the terms of
the 1582 Agreement.  Specifically, Glidden contends that the agreement provides
only that All Pro is entitled to be reimbursed for its actual out of pocket costs. 
All Pro responds that a reasonable interpretation of the agreement is that it
was entitled to be reimbursed at its $32.50 per hour T&M rate.  

Applicable
Law

Whether
a contract is ambiguous is an issue of law, which we review de novo.  See Bowden
v. Phillips Petroleum Co., 247 S.W.3d 690, 705 (Tex. 2008); see also
Progressive County Mut. Ins. Co. v. Kelley, 284 S.W.3d 805, 808
(Tex. 2009) (court can consider issue of contractual ambiguity sua sponte).  Our
primary concern in interpreting a contract is ascertaining the true intent of
the parties. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996); XCO Production Co. v. Jamison, 194 S.W.3d 622,
627 (Tex. App.­­–Houston [14th Dist.] 2006, pet. denied).  We examine the
writing as a whole in an effort to harmonize and give effect to all the
provisions of the contract so that none will be rendered meaningless.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Jamison, 194
S.W.3d at 627.  We presume that the parties to a contract intend every clause
to have some effect.  Heritage Res., 939 S.W.2d at 121.  We give
terms their plain, ordinary, and generally accepted meaning unless the contract
shows the parties used them in a technical or different sense.  Id.

A
contract is not ambiguous if it can be given a certain or definite meaning as a
matter of law.  Universal Health Servs., Inc. v. Renaissance Women’s
Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003); Columbia Gas Transmission
Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  Lack of
clarity does not create an ambiguity.  Universal Health Servs.,
121 S.W.3d at 746; Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132,
134 (Tex. 1994).  Further, a contract is not ambiguous simply because the
parties advance conflicting interpretations.  Columbia Gas Transmission
Corp., 940 S.W.2d at 589; Forbau, 876 S.W.2d at 134.
Rather, a contract is ambiguous if it is subject to two or more reasonable
interpretations after applying the pertinent rules of construction.  Universal
Health Servs., 121 S.W.3d at 746; Columbia Gas Transmission Corp.,
940 S.W.2d at 589.  If a contract is ambiguous, a fact issue exists on the
parties’ intent.  Columbia Gas Transmission Corp., 940 S.W.2d at
589.

In
determining whether a contract is ambiguous, we look to the contract as a
whole, in light of the circumstances present when the contract was executed.  Jamison,
194 S.W.3d at 627; see also Hewlett-Packard Co. v. Benchmark
Elecs., Inc., 142 S.W.3d 554, 561 (Tex. App.–Houston [14th Dist.] 2004,
pet. denied) (“We construe a contract from a utilitarian standpoint, bearing in
mind the particular business activity sought to be served.”).  These
circumstances include the commonly understood meaning in the industry of a
specialized term, which may be proven by extrinsic evidence such as expert
testimony or reference material. Jamison, 194 S.W.3d at 627–28.

Contractual
Construction

            In
the instant case, the parties’ agreement set forth, in pertinent part, as
follows:

 

ICI will also fully [reimburse] All Pro for any future
costs associated with the continued remediation and preparation
for application of dry-fall product, and the additional cost
associated with time, overhead, equipment, labor, material, other expenses
above and beyond the costs which would have been incurred by All
Pro in [completing] the Walmart Tyler job, had there not been a product
failure.

 

(emphasis
added).  Glidden argues that the agreement required only that it pay All Pro
for the actual hourly wage All Pro paid its workers because the agreement
requires only that it “reimburse” All Pro for remediation costs.  All Pro
contends that Glidden’s interpretation fails to take into account the remaining
language of the agreement, particularly the reference to “additional cost”
associated with completing the job.  

“Reimburse”
means “to pay back or compensate (a person) for money spent or losses or
damages incurred.”  See The
American Heritage Dictionary 1042 (2d College Ed. 1982).  Here, Glidden
agreed to reimburse All Pro’s “costs” associated with remediation and
completion of the job.  Thus, we must determine if the word “cost” is
ambiguous.

            “Cost”
means either “an amount paid or required in payment for a purchase price” or “a
loss, sacrifice, or penalty; [a] detriment.”  See The American Heritage Dictionary 329
(2d College Ed. 1982).  These varying definitions of “cost” from the narrow
“amount paid” meaning to the broad “loss” or “detriment” meaning make less
plain the intent of the parties as expressed through the language of their
agreement.   The parties could have intended the term “costs” to be understood
by the more narrow meaning of the “amount paid” by All Pro.  Yet, when we
consider the surrounding language and discern what might comprise “additional
cost associated with time, overhead, equipment, labor, material, and other
expenses,” the more broad definition of “cost” becomes an equally reasonable
expression of what may have been the parties’ intent.  It is conceivable that
this more broad notion of “cost” could include losses associated with, among
other things, rates All Pro could have charged on another job had it not been
required to perform remediation and reapplication work on the Wal-Mart job.  Therefore,
considering the range of meanings for the word “cost,” it is reasonable to
conclude that the “costs” to which the agreement refers might include all costs
associated with labor, which could be charged at a higher rate than All Pro’s
out of pocket costs.  Having considered the plain language of the agreement, we
conclude that the term “costs” is reasonably susceptible to more than one
meaning.  See Universal Health Servs., 121 S.W.3d at 746. 
Accordingly, we hold that the parties’ agreement is ambiguous.

Parol
Evidence

Having
determined that the agreement is ambiguous, we now consider any parol evidence
of record to determine the parties’ intent.  See Edascio, L.L.C. v.
NextiraOne, L.L.C., 264 S.W.3d 786, 796 (Tex. App.–Houston [1st Dist.]
2008, pet. denied).  The first paragraph of the agreement concerns Glidden’s
reimbursement of All Pro’s remediation expenses[1]
through June 15, 2006.  On June 16, 2006, Echols sent an email to Brooks, to
which he attached an invoice setting forth All Pro’s expenses incurred from
June 2, 2006 through June 15, 2006 in correcting the problems on the Wal-Mart
job.[2] 
The invoice calculated labor expenses at a rate of $32.50 per hour.[3] 
Brooks conceded at trial that he had received this invoice.  Thus, the evidence
reflects that when it was negotiating what ultimately would become the terms of
the first paragraph of the 1582 Agreement, Glidden had before it documentation
reflecting that All Pro’s remediation expenses were calculated at a rate of
$32.50 per hour.  Glidden’s subsequent acquiescence to the terms of the first
paragraph of the agreement, in which it agreed to pay All Pro’s remediation
expenses, is some evidence of the parties’ intent that All Pro’s costs that
Glidden agreed to reimburse under the second paragraph of the agreement would
be calculated using the same rate.  Accordingly, we hold that the evidence
supports the trial court’s interpretation of the 1582 Agreement that the
parties intended that the intended rate of reimbursement to All Pro was $32.50
per hour.  Glidden’s first issue is overruled.

 

Overtime Wages

            In
its second issue, Glidden argues that the evidence is not legally sufficient to
support the trial court’s award to All Pro to the extent it was based on
overtime labor charges because All Pro did not pay its employees overtime or
regular time wages for working more than forty hours per week.  

Evidentiary
Sufficiency

In
an appeal from a bench trial, a trial court’s findings of fact “have the same
force and dignity as a jury’s verdict upon questions.”  Anderson v. City
of Seven Points, 806 S.W.2d 791, 795 (Tex. 1991).  A trial court’s
findings are reviewable for legal and factual sufficiency of the evidence by
the same standards that are applied in reviewing evidence supporting a party’s
answer.  Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). 
When a trial court enters findings of fact and conclusions of law, we “indulge
every reasonable presumption in favor of the findings and judgment of the trial
court, and no presumption will be indulged against the validity of the judgment.” 
Vickery v. Comm’n for Lawyer Discipline, 5 S.W.3d 241, 252 (Tex.
App.–Houston [14th Dist.] 1999, pet. denied).  In conducting our review, we are
mindful that the factfinder was the sole judge of the credibility of the
witnesses and the weight to be given to their testimony.  Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  As long as
the evidence falls “within the zone of reasonable disagreement,” we will not
substitute our judgment for that of the factfinder.  See City of Keller
v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).

            When
the party who had the burden of proof at trial attacks the legal sufficiency of
an adverse finding, the party must show that the evidence establishes, as a
matter of law, all vital facts in support of the issue.  Dow Chem. Co. v.
Francis, 45 S.W.3d 237, 241 (Tex. 2001).  In our review, we first
examine the record for evidence supporting the adverse finding, crediting
favorable evidence, if a reasonable jury could, and disregarding evidence to
the contrary, unless a reasonable jury could not.  City of Emory v. Lusk,
278 S.W.3d 77, 84 (Tex. App.–Tyler 2009, no pet.).  If there is no evidence to
support the finding, we examine the entire record to determine if the contrary
proposition is established as a matter of law.  Dow Chem. Co., 46
S.W.3d at 241.  We will sustain the issue only if the contrary proposition is
conclusively established.  Id.  The matter is conclusively
established only if reasonable people could not differ in their conclusions.  City
of Keller, 168 S.W.3d at 816. 

            We
review de novo the trial court’s conclusions of law.  See BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  If we
determine that the trial court made an erroneous conclusion of law, we will not
reverse if the trial court rendered the proper judgment.  See id. 
Conclusions of law will be upheld on appeal if the judgment can be sustained on
any legal theory supported by the evidence.  Raman Chandler Property v.
Caldwell’s Creek, 178 S.W.3d 384, 396 (Tex. App.–Fort Worth 2005, pet.
denied).

            In
the case at hand, we have previously held that the term “costs” in the 1582
Agreement is ambiguous and have considered parol evidence, specifically the
first invoice All Pro sent to Glidden during the parties’ negotiations, to
determine the parties’ contractual intent.  Considering further the language
contained in the first invoice, we note the language underneath the listing of
total labor expenses calculated at the $32.50 per hour rate, which states
“[n]ot including overtime[.]”  Analyzing the effect of this first invoice in a
similar fashion to our analysis above, we conclude that there is some evidence
that the parties intended for All Pro to be reimbursed for labor at overtime
rates.

            Chris
Norris, vice president of All Pro, testified that it was standard practice in
the construction industry that all work performed on nights or weekends was
billed using overtime rates.  Norris further testified that All Pro’s billing
practice was to charge time-and-a-half for work performed on nights or
weekends.  Norris confirmed that the “not including overtime” notation on the
first invoice was intended to convey to Glidden that it could be charged an
overtime rate.  Terry Westmoreland, the Glidden sales representative who monitored
the job, confirmed in his testimony that much of the work was being done during
what would be considered overtime hours in the industry.  Finally,
the “Additional Work Order T&M Summary,” which covered work done from June
16­, 2006 through June 21, 2006, sets forth that 505.5 man hours were spent on
the job at the overtime rate of $48.75 per hour, one and one-half times the
$32.50 per hour rate.  Accordingly, we hold that there is legally sufficient
evidence to support the trial court’s award to the extent that the award was
based on billed overtime wages.  Glidden’s second issue is overruled.

Finding of
Illegal and/or Fraudulent Conduct

In
its third issue, Glidden contends that the trial court’s award to All Pro was
erroneous to the extent it was based on overtime labor charges because the
trial court also found that All Pro acted illegally and/or fraudulently by not
paying its employees lawfully prescribed overtime wages.

             
Courts will not aid a party in carrying out a fraud.  LaForce v. Bracken,
141 Tex. 18, 21, 169 S.W.2d 465, 467 (1943).  In support of its proposition,
Glidden cites Bracken, Grant v. Laughlin Environmental,
Inc., No. 01-07-00227-CV, 2009 WL 793638 (Tex. App.–Houston [1st Dist.]
2009, no pet.) (mem. op. on reh’g), and De La Penza v. Elizinga,
980 S.W.2d 920 (Tex. App.–Corpus Christi 1998, no pet.).  Each of these cases
concerns disputes between parties to contracts.  However, Glidden has cited no
authority, nor are we aware of any authority, holding that illegal or
fraudulent conduct by a party to a contract toward a nonparty serves to negate
the contractual obligations of the other party to the contract.  All Pro’s
laborers were not parties to the 1582 Agreement.  Therefore, any improper
activity found by the trial court to have been committed by All Pro with regard
to its payment of its laborers was not relevant to the parties’ obligations
under the 1582 Agreement.  

A
finding of fact or conclusion of law made by the trial court that is immaterial
and not at issue in the case cannot present reversible error.  Wiley v.
Baker, 597 S.W.2d 3, 6 (Tex. Civ. App.–Tyler 1980, no writ); see
also Cook Co. Tax Appraisal Dist. v. Teel, 129 S.W.3d 724,
731 (Tex. App.–Fort Worth 2004, no pet.).  In the instant case, the
trial court’s finding that All Pro failed to pay its laborers overtime wages is
immaterial because it is not relevant to the parties’ obligations under the 1582
Agreement.  Accordingly, we hold that this finding does not undermine the trial
court’s award of damages to All Pro.  See Tex. R. App. P. 44.1(a)(1).  Glidden’s third issue is
overruled.

 

Glidden’s Attorney’s Fees

            In
its fourth issue, Glidden contends that the trial court erred in failing to
award it the attorney’s fees it expended in recovering the $71,218.95 for the
cost of the materials it furnished to All Pro.  All Pro responds that Glidden
cannot recover attorney’s fees because it did not receive a net recovery due to
the trial court’s $189,739.93 award to All Pro.  

            Whether
a party is entitled to recover attorney’s fees is a question of law, which we
review de novo.  See Holland v. Wal-Mart Stores, Inc., 1
S.W.3d 91, 95 (Tex. 1999).  Attorney’s fees are not recoverable unless allowed
by statute or by contract.  Id.  To obtain an award of attorney’s
fees under section 38.001 of the civil practice and remedies code, a party must
(1) prevail on a cause of action for which attorney’s fees are recoverable and
(2) recover damages.  Green Intern., Inc. v. Solis, 951 S.W.2d
384, 390 (Tex. 1997).  A party requesting attorney’s fees under section 38.001
need not obtain a net recovery to be entitled to recover its attorney’s fees.  See
Imperial Lofts, Ltd. v. Imperial Woodworks, 245 S.W.3d 1, 7 (Tex.
App.–Waco 2007, pet. denied) (citing McKindley, 685 S.W.2d at 10–11).


            Here,
the trial court awarded Glidden $71,218.95 for the materials that it furnished
to All Pro for the Wal-Mart Super Center job.  Accordingly, we hold that
Glidden was entitled to recover its reasonable attorney’s fees for successfully
prosecuting this claim.  See Tex.
Civ. Prac. Rem. Code Ann. § 38.001(3) (Vernon 2008); Imperial
Woodworks, 245 S.W.3d at 7.  Glidden’s fourth issue is sustained.

 

Disclaimer of Consequential Damages

            In its
first cross-issue, All Pro contends that the trial court erred when it did not award
$42,865.00 in lost profits against Glidden because of two contracts it was
unable to perform due to the remediation work it agreed to do for Glidden under
the 1582 Agreement.  Glidden responds that it had a disclaimer in its terms and
conditions set forth in its invoice, which limited its liability to All Pro for
lost profits or consequential damages.  It further contends no language in the 1582
Agreement could be interpreted to allow the recovery of lost profits.

            Westmoreland
specified that he had, as the sales representative of Glidden, dealt with
Norris since 1997.  Westmoreland further stated that the terms and conditions section
of the invoice for all of the sales from that time forward, including the sale
of the 1582 paint, contained a disclaimer of any consequential damages.  Norris
acknowledged that he had received this disclaimer from Westmoreland when he
purchased the 1582 paint from Glidden.  However, All Pro contends that the
language in these disclaimers, although in writing, was not conspicuous.  See
Tex. Bus. & Com. Code Ann. §
2.316(b) (Vernon 2002).

            Profits
lost on other contracts resulting from the breach of a contract may be
classified as “indirect” or consequential damages.  Mood v. Kronos
Products, Inc., 245 S.W.3d 8, 12 (Tex. App.–Dallas 2007, pet. denied). 
Consequential damages can be disclaimed.  See Morgan Buildings and
Spas, Inc. v. Humane Society of Southeast Texas, 249 S.W.3d 480, 490
(Tex. App.–Beaumont 2008, no pet.); see also Tex. Bus. & Com. Code Ann. § 2.316(b) (Vernon 2009). 
Conspicuousness in a disclaimer is not required if the buyer has actual
knowledge of it.  Womco, Inc. v. Navistar Intern. Corp., 84
S.W.3d 272, 279 (Tex. App.–Tyler 2002, pet. denied); see also Cate v.
Dover Corp., 790 S.W.2d 559, 561 (Tex. 1990) (“Inconspicuous language
is immaterial when the buyer has actual knowledge of the disclaimer.”).  This
knowledge can result from the buyer’s prior dealings with the seller.  Id.

            Here,
the record reflects that Glidden and All Pro had been dealing with each other
for nine years.  There is also evidence that the disclaimer of these
consequential damages remained the same throughout the course of dealing
between the two parties.  It was, therefore, unnecessary for the language in
Glidden’s disclaimer of the consequential damages to be conspicuous for it to
be effective.  Further, there was no language in the second paragraph of the 1582
Agreement such as “future opportunity costs,” “lost profits,” or “consequential
damages” that would have allowed the trial court to find this disclaimer to be ineffective. 
Thus, we hold that Glidden effectively disclaimed any consequential damages All
Pro may have had as a result of the failure of the 1582 paint.  All Pro’s first
cross-issue is overruled.

 

Cost of Replacement Paint

            In its
second cross-issue, All Pro contends that Glidden represented to it that the
replacement paint it furnished would be free and without charge.  Norris
testified that on June 8, 2006, Westmoreland told him that there would be no
charge for the replacement paint.  Westmoreland denied that he ever had a
discussion with Norris regarding the replacement paint’s being free.  In fact,
Westmoreland testified that Norris told him he would not deal with him on the
paint failure because he wanted something in writing from someone with more
authority in the Glidden hierarchy.

            In a
bench trial, the trial court has the right to accept or reject any part of a
witness’s testimony.  Dwairy v. Lopez, 243 S.W.3d 710, 713 (Tex.
App.–San Antonio 2007, no  pet.).  The court may believe one witness and
disbelieve others.  Id.  As is apparent from the trial court’s
findings of fact, the trial court determined that Westmoreland made no
representation to Norris that the paint would be free.  All Pro’s second cross-issue
is overruled.

 

Reasonable Attorney’s Fees for All Pro

            In
its third cross-issue, All Pro contends that the trial court erred in failing
to award it the entirety of the $148,000.00 in attorney’s fees that it sought,
and to which Glidden had not objected at trial.  Glidden responds that the
trial court had the authority to determine the reasonableness of All Pro’s
attorney’s fees and that its award of $118,000.00 in attorney’s fees under the 1582
Agreement should be upheld.

            Reasonableness
of attorney’s fees is ordinarily left to the factfinder, and the reviewing
court may not substitute its judgment for that of the factfinder.  See
Smith v. Patrick W.Y. Tam Trust, 296 S.W.3d 545, 547 (Tex. 2009).  In
awarding attorney’s fees, the trial court, as the trier of fact, must take into
account various factors such as the nature and complexity of the case, the
nature of the services provided by counsel, the time required for trial, the
amount of money involved, the client’s interest that is at stake, the
responsibility imposed upon counsel, and the skill and expertise required.  See
Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881 (Tex.
1990).  Ordinarily, the allowance of attorney’s fees rests within the sound
discretion of the trial court and will not be reversed without a showing of
abuse of that discretion.  Id.  An agreement to pay unspecified
attorney’s fees implies payment of a reasonable fee for the attorney’s
services.  Kurtz v. Kurtz, 158 S.W.3d 12, 18 (Tex. App.–Dallas
2004, pet. denied).

            In
the instant case, it was within the trial court’s discretion to determine what
would be a reasonable attorney’s fee award to All Pro.  We will not substitute
our judgment for that of the trial court.  Therefore, we hold the trial court
did not abuse its discretion in awarding an amount of attorney’s fees less than
the amount All Pro sought.  All Pro’s third cross-issue is overruled.

 

Conclusion

            We
have overruled Glidden’s first, second, and third issues as well as All Pro’s
first, second, and third cross-issues.  Further, we have sustained Glidden’s
fourth issue.  Accordingly, we reverse the trial court’s judgment
in part and remand the cause to the trial court for the consideration
of reasonable and necessary attorney’s fees for Glidden’s breach of contract
claim.[4] 
We affirm the remainder of the trial court’s judgment.

 

                                                                                    James T. Worthen

                                                                                             
Chief Justice

 

 

 

Opinion delivered February 28,
2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









[1]
Similar to “cost,” the term “expense” has both narrow and broad meanings. 
“Expense” means either “[s]omething paid out … to accomplish a purpose” or
“[s]omething given up for the sake of something else” or “sacrifice.”  See The American Heritage Dictionary 477
(2d College Ed. 1982).





 

[2]
In his email, Echols stated that these remediation expenses “include real out
of pocket monies spent by All Pro.”  However, Echols did not limit All Pro’s
remediation expenses to these “out of pocket monies.” 

 





[3]
The $32.50 labor rate in the first invoice is not labeled as a T&M rate. 
However, a subsequent invoice was submitted by All Pro to Glidden, which
chronicled All Pro’s costs under the heading “T&M Summary” and set forth
the rate for labor as $32.50 per hour.





[4]
See Tex. R. App. 44.1(b); see
also Brown v. Traylor, 210 S.W.3d 648, 659–60 (Tex. App.–Houston [1st
Dist.] 2006, no pet.).