Gassan DWAIRY, Appellant,

v.

Leonardo LOPEZ, As Attorney In Fact for Valdemar Lopez, Appellee.

No. 04–06–00825–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 10, 2007.

Baldemar Garcia, Jr., Person, Whitworth, Borchers & Morales, L.L.P., Laredo, Carl D. Haddad, Gray, Burch & Haddad, Houston, for appellant.

Leticia L. Martinez, Law Office of Leticia L. Martinez, Laredo, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION and PHYLIS J. SPEEDLIN, Justices.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from the trial court's judgment decreeing that a mineral deed was invalid. We affirm.

## BACKGROUND

Valdemar Lopez inherited an undivided one-fifth interest in six tracts of land, totaling approximately 1,100 acres, located in Webb and Duval Counties. After partitioning the surface and selling some of the land, Lopez owned 114 surface acres and an undivided one-fifth mineral interest in the full six tracts of land.

In August 2000, Lopez met with Gassan Dwairy to discuss the sale of Lopez's land to Dwairy. After touring the land, Lopez and Dwairy executed an Unimproved Property Contract under which Lopez agreed to sell to Dwairy "146 acres, more or less, including all minerals" for a total sales price of $50,000. The contract contained a "Special Provision" stating the sale was contingent upon Lopez's "ownership and conveyance to [Dwairy] of 100% of the mineral interest in said property." An Exhibit A, attached to the contract, specified that the tract of land was only 114 acres. The contract was signed by both Lopez and Dwairy and notarized by Nora Cremar. Pursuant to the terms of the contract, Dwairy gave Lopez an earnest money deposit in the amount of $5,000.

The parties met again on November 24, 2000, at which time Dwairy paid Lopez an additional $5,000 toward the purchase price of the land. It is at this point in time

that the parties' agreement over what document or documents were executed diverge. According to Dwairy, Lopez executed a Mineral Deed to 1,109 acres in Dwairy's favor, which was notarized by Cremar. Dwairy claimed, at trial, that he accepted Lopez's one-fifth mineral interest in the approximately 1,109 acres to compensate for receiving less than the original 146 acres and 100% of the minerals in the August 2000 deal. According to both Lopez and Cremar, Lopez and Dwairy met in Cremar's office to execute two Unimproved Earnest Money Contracts, and not a Mineral Deed.

On December 26, 2000, Lopez and Dwairy met in the offices of Dwairy's attorney, this time to execute a General Warranty Deed, under which Lopez conveyed to Dwairy the 114 acres. On the same date, Dwairy paid Lopez the balance outstanding on the $50,000 purchase price.

When Lopez later attempted to lease his mineral rights, the oil and gas company advised him that he did not own the mineral rights in view of the Mineral Deed that had subsequently been recorded. Lopez sued Dwairy, asserting the Mineral Deed was a slander on his title and the deed was voidable because his signature on the deed was a forgery. Lopez sought a declaration that the deed was of no force or effect, an order canceling the deed and removing the cloud on his title, as well as actual and exemplary damages and attorney's fees, costs, and post-judgment interest. The trial court decreed the Mineral Deed "invalid, null and void, and hereby rescinded and of no force and effect." The court also quieted title in Lopez to the six tracts of land. The court did not award any monetary damages to Lopez. The trial court issued findings of fact, which included findings that the transaction was void of consideration, that Lopez's and Cremar's signatures on the Mineral Deed were both forged, and Dwairy fraudulently procured the deed. Dwairy now appeals.

## DISCUSSION

■ On appeal, Dwairy asserts the evidence is legally and factually insufficient to support the trial court's finding that the signatures on the Mineral Deed were forged. In a bench trial, such as here, we review the findings of fact for legal and factual sufficiency of the evidence by the same standards used in reviewing the evidence supporting a jury's verdict. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied); *see City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) (discussing standards for legal sufficiency review); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) (discussing standards for factual sufficiency review).

■ Here, Lopez claimed his signature was forged. Dwairy counters that the lack of a genuine grantor's signature is not sufficient to set aside an acknowledged instrument as a forgery, unless fraud or imposition is established. According to Dwairy, the presence of Cremar's acknowledgment is irrefutable proof of its validity and Lopez's testimony that he did not sign the Mineral Deed does not invalidate the deed. However, Cremar testified her signature was also forged. A forged deed is void *ab initio*. *Hennessy v. Blair*, 107 Tex. 39, 173 S.W. 871, 874 (1915); *Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 947 (Tex.App.-Houston [1st Dist.] 1993, no writ). Thus, a forged deed passes no title. *See Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex.App.-Fort Worth 1992, writ denied).

At trial, Lopez testified he did not sign the Mineral Deed; the signature on the deed was not his; he did not know who signed his signature; he did not give anyone permission to sign his signature; and

he never appeared before Cremar to sign the deed. Cremar testified she provided notary services to Lopez on three occasions: (1) on August 12, 2000 to notarize the Unimproved Property Contract in the presence of Lopez and Dwairy; (2) on November 24, 2000 to notarize two "property contracts"[1] similar to the August 2000 Unimproved Property Contract in the presence of Lopez and Dwairy; and (3) on December 1, 2000 to provide notary services on another document unrelated to the underlying litigation in the presence of Lopez, Yolanda Pais and her sister, Diane Santian.[2] Cremar said she recalled that the only difference between the two November 2000 "property contracts" was that one was for Webb County and the other for Duval County, and in all other respects she remembered them as being the same. She said she was told the August 2000 Unimproved Property Contract was not valid because it listed both counties in the property description, while the November 2000 "property contracts" listed one county per contract to allow for each contract to be separately recorded in the appropriate county. Cremar admitted she maintains no written records, in the form of a notary log or receipt book, to show what documents she notarized. However, Cremar unequivocally stated she never notarized the Mineral Deed dated November 24, 2000; had never seen the document; the signature purporting to be hers was, in fact, not her signature; and she did not know who signed her signature to the deed.

Dwairy testified he and Lopez executed the Mineral Deed, which was notarized by Cremar, on November 24, 2000. Dwairy denied ever seeing copies of any November 24, 2000 Unimproved Property Contracts. Dwairy's handwriting expert, William Simpson, testified he examined a copy of Lopez's known signature and a copy of the questioned signature, and he concluded the signatures were written by the same hand. Likewise, Simpson stated the known signature of Cremar and the questioned signature of Cremar were written by the same hand. Simpson admitted the documents he examined were not the originals, but instead, were certified copies, and he agreed photographic copies can be distorted. Simpson testified that although there were discrepancies between the known and questioned signatures, he thought there were more similarities than differences.

■■■ Although Lopez's and Cremar's testimony conflicted with Dwairy's, in a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *G. Prop. Mgmt., Ltd. v. Multivest Fin. Serv. of Texas, Inc.*, 219 S.W.3d 37, 49 (Tex.App.-San Antonio 2006, no pet.). And, although Lopez was at times confused in his testimony, in a bench trial the trial court has the right to accept or reject any part or all of a witness's testimony.[3] *Id.* The court may believe one witness and disbelieve others and may resolve inconsistencies in any witness's testimony. *Id.* Because it was within the trial court's province here to weigh the credibil-

---

1. Neither of these documents were admitted into evidence, and Cremar described them only as "property documents." However, she testified the two documents were similar to the August 12, 2000 Unimproved Property Contract.

2. Both Lopez and Cremar testified Yolanda Pais was also present when both sets of the

Unimproved Property Contracts were notarized. Ms. Pais, who is a friend of Lopez's, did not testify at trial. The December 1, 2000 document was not admitted into evidence.

3. Lopez was seventy-nine years old at the time of trial and relied, in part, on an interpreter.

ity of the witnesses and the weight to be given their testimony, the evidence is sufficient to support the trial court's findings that the signatures of Lopez and Cremar on the Mineral Deed were forged. Because the evidence supports a finding that the signatures were forged, the Mineral Deed was an absolute nullity and did not pass title to Dwairy. *See Hennessy,* 173 S.W. at 874.

### LOPEZ'S CROSS–ISSUE

In a cross-issue, Lopez complains that the trial court's judgment voided the Mineral Deed, but failed to nullify Dwairy's mineral interest conveyed in the General Warranty Deed. Lopez asks this court to render a judgment rescinding the one-fifth mineral interest conveyed in the General Warranty Deed. However, Lopez did not file a separate notice of appeal, even though he asks this court to alter the trial court's judgment and grant him more favorable relief than did the trial court. *See* Tex.R.App. P. 25.1(c).

 Pursuant to Rule 25.1(c), a party seeking to alter the trial court's judgment must file a notice of appeal. *Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 584 (Tex.2002). An "appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause." Tex.R.App. P. 25.1(c). No just cause exists here to review Lopez's cross-issue. Because Dwairy filed a motion for new trial, Lopez had ninety days after the judgment, plus an additional fifteen days, in which to file a notice of appeal. Tex.R.App. P. 26.1(a), (d). Also, Lopez did not bring his complaint to the trial court's attention in his own post-judgment motion. Therefore, we do not consider Lopez's cross-issue. *See Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 171 (Tex.2004); *In re M.P.M.,* 161 S.W.3d 650,

660–61 (Tex.App.-San Antonio 2005, no pet.).

### CONCLUSION

We overrule Dwairy's issue on appeal, and affirm the trial court's judgment.