

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00896-CV

Hugo **ALANIZ**,
Appellant

v.

Jose Maria **AGUIRRE**, Elias Aguirre Jr., Argelio Aguirre,
Jose Guadalupe Aguirre, and Elsa A. Lara,
Appellees

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-09-71
Honorable Jose Luis Garza, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  December 2, 2015

REVERSED AND REMANDED

In the underlying trespass to try title lawsuit, the trial court entered a judgment declaring the appellees owned title to certain real property based on adverse possession. On appeal, appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that appellees adversely possessed the property described in the trial court's judgment. In addition, appellant challenges the trial court's assessment of court costs against him. We reverse the trial court's judgment and remand the cause for further proceedings in the interest of justice.

**BACKGROUND**

Because appellant raises challenges to the legal and factual sufficiency of the evidence, the following is a detailed summary of the evidence presented at trial.

The appellees are five of the eight children of Elias Aguirre, Sr. and Manuela Aguirre.[1] Elias, Sr. and Manuela resided in a house on the property at issue since 1972 or 1973, where they raised their children. Elias, Sr. died in 2001, approximately six years after Manuela died.

In 2007, appellant Hugo Alaniz wanted to purchase the property where Elias, Sr. and Manuela had lived. Initially, he made a deal with appellee Jose Maria Aguirre to purchase the property, but was then informed that the heirs of A.V. Margo owned record title to the land.[2] After Alaniz was told about the record title, Jose Maria and Merced Aguirre[3] introduced Alaniz to Margo's son Federico.[4] The evidence regarding the reason for this introduction is conflicting. In any event, Alaniz proceeded to purchase the property from Federico and his siblings for $10,000. Alaniz received a deed from Federico and his siblings and title insurance at the closing of the purchase.

In February of 2009, the appellees filed the underlying lawsuit claiming they owned the property by adverse possession under the ten-year limitations statute. In their petition, the appellees described the property as follows:

> A tract of land containing 0.1530 of an acre (6,664 sq. ft.) out of Share 9-D, Porcion 85, ancient jurisdiction of Camargo, Mexico, now Starr County, Texas, A. De la Rosa Original Grantee, Abstract 148.

---

[1] Although the petition filed in the underlying lawsuit listed all eight children as plaintiffs, the trial court's judgment awarded title only to the five children who are the appellees in this appeal.

[2] A.V. Margo died in 1984.

[3] Merced is one of the children who is not an appellee.

[4] Federico is also referred to in the record as Fred.

In June of 2009, the appellees filed a demand for abstract of title, demanding that Alaniz furnish an abstract in writing of his claim or title to the property. The property description in the demand for abstract of title is the same property description contained in the petition.

On August 8, 2013, the cause was called for a bench trial. The first witness to testify was Eulalio Aguilar, Jr., a registered land surveyor with twenty-three years of experience. The appellees' attorney asked Aguilar if a metes and bounds description she provided to Aguilar matched the general legal description of the property contained in the petition. Aguilar stated he was unsure because he only received "this" about five minutes ago. Aguilar stated he knew where the property in dispute was located, but he did not know if the two descriptions were of the same property, stating, "your guess is as good as mine as far as I'm concerned." The appellees' attorney then showed Aguilar a warranty deed and asked if the acreage and square footage in the deed were the same acreage and square footage described in the petition. Aguilar stated the acreage and square footage were the same, but he would be unable to state if the deed described the same property as the petition or where the property was located without surveying it on the ground. Although the property descriptions both referred to Porcion 85, Aguilar stated Porcion 85 is 8,000 feet wide and seventeen miles long. Aguilar was excused as a witness subject to recall.

Alaniz was then called as an adverse witness. Alaniz testified Merced Aguirre, one of Elias, Sr. and Manuela's children who is not an appellee, first offered to sell him the property in question ten years earlier. At that time, Merced mentioned taxes were owed on the property, but Alaniz did not have the money to buy the property. In 2007, Alaniz stated he agreed to purchase the property from the Aguirres for $45,000, and gave them a truck, with an agreed value of $5,000, as a down payment. The next day, Alaniz was told the Aguirres did not own title to the property. After Alaniz discovered that information, Jose Maria and Merced took Alaniz to introduce him to Federico, and Merced told Alaniz that Federico owned the property. Alaniz testified he came to

the United States in 1998 or 1999, and Elias, Sr. was living on the property at that time. Alaniz stated when he purchased the property in 2007, the house on the property was abandoned. Alaniz testified he purchased the property for $10,000 and received a title insurance policy from Clarke Title Company. Alaniz was not told the title insurance policy did not insure against parties in possession, but Alaniz did know the Aguirres claimed to own the property. After he was sued, Alaniz did not have any conversations with Federico or ask him to defend the title, but Alaniz testified Federico previously told him he was afraid the Aguirres would file a lawsuit. Alaniz further testified he also purchased a tract of land from Jesus Tamez adjacent to the property Alaniz purchased from Federico and his siblings.

After Aguilar and Alaniz testified, the trial was recessed for that day. On August 28, 2013, Alaniz filed a motion to substitute counsel, and trial did not resume until August 12, 2014. Before trial resumed, Alaniz filed a response to the appellees' demand for an abstract of title. In describing the real property in dispute, the response set forth the same property description contained in the appellees' petition.

When trial resumed, appellee Argelio Aguirre was the first witness to testify. Argelio stated his father Elias, Sr. purchased the property in question from Jesus Tamez. Two receipts were introduced into evidence of payments made by Elias, Sr. to Tamez. Both receipts were dated June 26, 1972. The receipts referenced the payments being made for "lots," but they did not contain a property description. Argelio testified Tamez pointed out the property to them. Argelio testified Elias, Sr. purchased the house located on the property from Cecilio Rodriguez with a loan from A.V. Margo for whom Elias, Sr. worked. Argelio believed Elias, Sr. paid "6,000-and-some" for the house, but stated he did not remember the exact amount. Argelio testified Elias, Sr. repaid Margo for all of the loan except the final payment of $2,600. Elias, Sr. did not pay the final

payment because Margo never paid Elias, Sr. for transporting some melons. Argelio testified his father Elias, Sr. always claimed to own the property but never obtained a deed from Tamez.

On cross-examination, Alaniz's attorney showed Argelio a deed from Tamez to Margo dated effective June 29, 1972, conveying two tracts of land totaling 0.1509 acres of land. This deed was attached to Alaniz's abstract of title response as evidence that the property in question was conveyed to Margo. When Alaniz's attorney offered the deed into evidence, the appellees' attorney stated he was not stipulating that the deed described the property in dispute. Argelio could not explain the deed; however, Argelio denied that Elias, Sr. was on the property with Margo's permission.

Jose Maria's testimony mirrored the testimony of his brother Argelio regarding Elias, Sr.'s acquisition of the property. Jose Maria stated his father Elias, Sr. purchased the property in question from Tamez, and Margo loaned Elias, Sr. the money to purchase the house. Jose Maria identified two receipts that were introduced into evidence. The receipts documented payments from Elias, Sr. to Margo to repay the loan. Both receipts were for $2,600. One receipt is dated December 5, 1975, and the other receipt is dated November 1, 1976. Jose Maria testified Elias, Sr. made three payments of $2,600, but did not make a last payment of $2,600 because Margo never paid Elias, Sr. for transporting produce to McAllen. Jose Maria testified Margo gave Elias, Sr. permission to work fields in California to repay the loan. Elias, Sr. worked for Margo for approximately 40 years until 1980, when the Aguirres purchased field trucks and started a different business.

Jose Maria testified he offered to sell the property to Alaniz for $50,000, and stated Alaniz gave him a truck as a partial payment. Jose Maria stated Federico previously told him the Aguirres owed Federico $10,000 for taxes on the property. Jose Maria testified Federico said he would give the Aguirres title to the property if they paid the $10,000. Jose Maria believed he owed Federico

for the taxes because he had taken Elias, Sr. to the tax office several times to pay taxes, but Elias, Sr.'s name was never shown as owing any taxes. Jose Maria testified he introduced Alaniz to Federico so Alaniz could pay Federico the $10,000 the Aguirres owed for the taxes as partial payment of the purchase price. Jose Maria stated Alaniz would owe the Aguirres a balance of $35,000 after he paid the $10,000 to Federico. Jose Maria denied telling Alaniz that Federico owned the property.

Federico testified his father, A.V. Margo, acquired the property in question from Tamez, and his father gave Elias, Sr. permission to live on the property. Federico stated the Aguirres never claimed to own the property, and they brought Alaniz to his house to introduce him because Alaniz wanted to purchase the property. Federico stated the Aguirres told Alaniz Federico owned the title to the property. Federico testified the Aguirres knew his father owned the property because after introducing Alaniz, they returned several times asking him to sell the property to them instead of selling it to Alaniz. Federico identified the deed he and his siblings signed conveying the property to Alaniz. When the deed was introduced into evidence, the appellees' attorney stated she was "not admitting that it's the property in issue."

On cross-examination, Federico was asked whether the deed from Tamez to his father described the property that was in dispute. Although Federico stated he was familiar with the metes and bounds description, he admitted he was not a surveyor. Federico was not sure how many tracts of land his father purchased from Tamez, but he knew his father purchased 6,600-some square feet in Share 9-D. Federico was not aware of any deed showing his father purchased all of Share 9-D from Tamez and also was not aware Share 9-D contained 35 acres of land. When appellees' attorney asked why the abstract of title did not mention the probate of his father's will, Federico responded that she would need to ask the title company. Federico assumed the inventory filed in the probate proceeding listed the property in question, but he was not certain. On re-direct

examination, Federico stated he read his father's will and saw the property in question listed in the will. Federico also testified that the property described in the deed from Tamez to his father was the property in dispute and was the same property on which Elias, Sr. was given permission to live.

Rosa Arrian, who was a neighbor of Elias, Sr. and Manuela, testified they resided on their property since 1972. Elias, Sr. and Manuela told her they purchased the property.

Alaniz was again called to testify and reiterated that he was informed Federico owned the property, but knew the Aguirres were claiming to own it. When Jose Maria and Merced took him to see Federico, they told him Federico was the owner of the property. Alaniz was shown the deeds for the property he purchased from Federico and the property he purchased from Tamez. The deed from Federico conveyed 0.1530 acres, while the deed from Tamez conveyed 0.264 acres of land. Alaniz testified he did not know much about numbers, but agreed he purchased what the papers showed he purchased.

Merced testified he knew Federico owned the property and took Alaniz to introduce him for that reason. On cross-examination, Merced stated his parents never told him the land would belong to him after they died. Merced testified Federico told the Aguirres he would sell them the property for $10,000. Merced stated he made a mistake in trying to sell the property to Alaniz without having title, but stated he thought the Aguirres owned the property because they had lived there for many years. Merced testified he did not know about adverse possession and did not know title could be obtained by adverse possession.

Jose Maria was recalled as a witness. Jose Maria testified that although Merced originally joined his siblings in filing the lawsuit, Merced became angry when he discovered the property would belong to all of the siblings, and not just to Merced. Jose Maria stated his parents told

Merced the property would belong to him when they died, but they never made a will, so the property belonged to all of the siblings.

At the conclusion of the testimony, the appellees' attorney offered into evidence Margo's will and the inventory filed in the probate proceeding, which did not specifically refer to the property in issue.

The trial court took the matter under advisement and encouraged the parties to resolve the matter. The trial judge directed the attorneys to send him proposed judgments if the matter was not resolved in two weeks. The proposed judgment submitted by the appellees had the trial court finding the appellees owned the following property by adverse possession:

> A tract of land containing 0.2648 OF OE [sic] ACRE (6,664 Sq.Ft.) out of Share 9-D, Porcion 85, Ancient Jurisdiction of Camargo, Mexico, now Starr County, Texas, A De La Rosa, Original Grantee, Abstract 148 and said 0.2648 of one acre (11,534 square feet) also being more particularly described as follows:

This general description is then followed by a metes and bounds description.

On June 4, 2014, Alaniz filed an objection to the proposed judgment, noting the property description was different from the description in the appellees' petition and the metes and bounds description in the proposed judgment was never introduced into evidence. In his objection, Alaniz also requested a status conference. On June 10, 2014, a Rule 11 agreement was filed in which the parties agreed to reset the status conference from June 24, 2014, to a later date at the court's convenience.

On August 27, 2014, the appellees filed a motion for entry of final judgment attaching the same proposed judgment. The trial court signed the appellees' proposed judgment on November 19, 2014.[5] Alaniz appeals.

---

[5] Between the entry regarding the June reset and the final judgment entry, the docket sheet contains the following two additional entries:

## STANDARD OF REVIEW

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury verdict. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review a trial court's factual findings under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Id*.; *Monroe v. Monroe*, 358 S.W.3d 711, 716 (Tex. App.—San Antonio 2011, pet. denied). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The trial court may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713 (Tex. App.—San Antonio 2007, no pet.). We may not pass upon the credibility of the witnesses, or substitute our judgment for that of the trial court, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In making this determination, we credit evidence favoring the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.* If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge must fail. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

---

08/20/2014 Status Conference Held — Defendant's Objection To Proposed Final Judgment, Will Provide Proposed Judgment.

09/24/2014 Rule 11 Agreed to Reset (Status – Proposed Judgment) setting for later date. November 19, 2014.

The appellate record does not contain reporter's records from either of these hearings.

In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Plas-Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the judgment only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## ADVERSE POSSESSION BURDEN OF PROOF

In order to establish adverse possession, the appellees were required to establish each of the following elements of the definition of adverse possession: (1) actual and visible appropriation of real property; (2) commenced and continued under a claim of right that is; (3) inconsistent with and hostile to the claim of another. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 804-05 (Tex. App.—San Antonio 2014, pet. denied); TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002). In addition, under the ten-year adverse possession statute, the appellees were required to prove they cultivated, used, or enjoyed the property for ten continuous years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.026(a); *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## CLAIM OF RIGHT/HOSTILE CLAIM

In his first issue, Alaniz contends the evidence is insufficient to establish the second and third elements of adverse possession because the evidence failed to establish the appellees' appropriation of the property was under a claim of right inconsistent with and hostile to the claim of another. Alaniz contends the trial court erred in finding adverse possession because the evidence established Elias, Sr. and Manuela did not claim ownership of the land but resided on the land with permission. The appellees respond Elias, Sr. claimed ownership of the land in 1972 and continuously resided on the land until his death in 2001.

To support his contention, Alaniz primarily relies on: (1) Federico's testimony that his father gave Elias, Sr. permission to reside on the property; (2) Federico's testimony that the Aguirres never claimed ownership and wanted him to sell the property to them instead of Alaniz; (3) Alaniz's testimony that Merced and Jose Maria told him Federico was the owner; and (4) Merced's testimony that Federico was the owner. As previously noted, however, the trial court, as the factfinder in this case, is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may believe or disbelieve the testimony of a witness, in whole or in part. *See City of Keller*, 168 S.W.3d at 819; *Dwairy*, 243 S.W.3d at 713. In addition, we may not pass upon the credibility of the witnesses, or substitute our judgment for that of the trial court, even if the evidence would clearly support a different result. *Maritime Overseas Corp.*, 971 S.W.2d at 407.

The testimony on which Alaniz relies was contradicted by the testimony of other witnesses. Both Argelio and Jose Maria testified Elias, Sr. purchased the property and claimed ownership of it from 1972 until his death in 2001. Similarly, the neighbor, Rosa Arrian, also testified Elias, Sr. claimed ownership of the property. Jose Maria denied telling Federico or Alaniz that the Aguirres did not own the property, and testified he introduced Alaniz to Federico so Alaniz could pay the $10,000 the Aguirres owed to Federico in partial payment of the agreed $50,000 purchase price. Finally, although Merced testified he made a mistake in agreeing to sell the property since Federico was the title owner, Merced also testified he did not know title to land could be acquired through adverse possession.

Deferring to the trial court's evaluation of the credibility of the witnesses and the weight to be given their testimony, we hold the evidence is legally and factually sufficient to support the trial court's finding that the appellees' appropriation of the property was under a claim of right inconsistent with and hostile to the claim of another. Alaniz's first issue is overruled.

## PROPERTY DESCRIPTION

In his second issue, Alaniz contends the evidence did not adequately or specifically describe the real property which the appellees claimed to own by adverse possession. Alaniz further asserts the property description contained in the judgment is different that the property the appellees alleged they adversely possessed in the petition. Finally, Alaniz contends the metes and bounds description contained in the judgment was never introduced into evidence at trial.

In a trespass to try title lawsuit, the petition must state "[a] description of the premises by metes and bounds, or with sufficient certainty to identify the same." TEX. R. CIV. P. 783(b); *see also Valadez v. Barrera*, 647 S.W.2d 377, 381 (Tex. App.—San Antonio 1983, no writ) (noting "property sought to be recovered must be described with particularity"). The description is necessary to put the defendant on notice of what land the plaintiffs seek to recover. *Valadez*, 647 S.W.2d at 381.

In addition to **pleading** a sufficient description of the land sought to be recovered, the party claiming title by adverse possession also has the burden of **proving** a description of the property adversely possessed. *Coleman v. Waddell*, 151 Tex. 337, 249 S.W.2d 912, 913 (1952); *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 819 (Tex. App.—Texarkana 2004, pet. denied). In other words, the adverse claimant must prove the location of the disputed property on the ground. *Perkins v. McGehee*, 133 S.W.3d 287, 291 (Tex. App.—Fort Worth 2004, no pet.); *Valadez*, 647 S.W.2d at 382; *Thompson v. Tex. Commerce Bank, Nat'l Ass'n*, 586 S.W.2d 138, 139 (Tex. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The general test for determining the sufficiency of a description of land is whether the tract can be identified with reasonable certainty. *Perkins*, 133 S.W.3d at 291; *Julien v. Baker*, 758 S.W.2d 873, 877 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

In this case, as previously noted, the appellees' petition described the land as follows:

A tract of land containing 0.1530 of an acre (6,664 sq. ft.) out of Share 9-D, Porcion 85, ancient jurisdiction of Camargo, Mexico, now Starr County, Texas, A. De la Rosa Original Grantee, Abstract 148.

The trial court's judgment, however, found appellees had title to the following property by adverse possession:

A tract of land containing 0.2648 OF OE [sic] ACRE (6,664 Sq.Ft.) out of Share 9-D, Porcion 85, Ancient Jurisdiction of Camargo, Mexico, now Starr County, Texas, A De La Rosa, Original Grantee, Abstract 148 and said 0.2648 of one acre (11,534 square feet) also being more particularly described as follows: [metes and bounds description]

In addition to the rule requiring a petition in a trespass to try title action to describe the property in dispute, TEX. R. CIV. P. 783(b), rule 301 of the Texas Rules of Civil Procedure requires a judgment to conform to the pleadings. TEX. R. CIV. P. 301. An award of title to a 0.2648 acre tract of land does not conform to pleadings alleging ownership of a 0.1530 acre tract. And, in this case, the judgment is internally inconsistent first describing the 0.2648 acre tract as containing 6,664 square feet, then describing the 0.2648 acre tract as containing 11,534 square feet.

In addition to the problem with their pleadings, the evidence presented at trial suffered from similar deficiencies. All of the deeds introduced to show ownership of the property in dispute described a 0.1530 acre tract of land. No deed was introduced into evidence describing a 0.2648 acre tract of land. In addition, no metes and bounds description for a tract of land containing 0.2648 acres was introduced into evidence.

The only reference in the documentary evidence admitted at trial to a 0.2648 acre tract of land is in an appraisal of property owned by Alaniz.[6] The testimony at trial established Alaniz

---

[6] Although appellees' brief refers to a plat or diagram of the property prepared by the registered land surveyor Aguilar which contains .26 acres, this plat appears only as an attachment to requests for production contained in the clerk's record. The plat was never introduced into evidence at trial.

acquired a 0.2648 acre tract of land from Tamez in addition to the 0.1530 acre tract Alaniz acquired from Federico and his siblings. The evidence did not, however, establish the 0.2648 tract of land Alaniz acquired from Tamez was the tract of land on which Elias, Sr. resided from 1972 until his death in 2001.

Because the appellees did not meet their burden of pleading or proving that they adversely possessed a 0.2648 acre tract, Alaniz's second issue is sustained. There is some support for this court reforming the trial court's judgment to incorporate the description of the property the pleading and evidence showed the appellees adversely possessed. *See Butler v. Hanson*, 473 S.W.2d 934, 934 (Tex. 1971). In this case, however, it is unclear from the trial court's judgment whether the trial court found the appellees adversely possessed 6,664 square feet of land (which would appear to contain 0.1530 acres) or 11,534 square feet of land (which may contain 0.2648 acres). It is clear, however, that the appellees' petition did not describe a 0.2648 acre tract of land, and the appellees did not prove at trial that they adversely possessed a 0.2648 acre tract of land. Given the internal inconsistencies in the trial court's judgment, we reverse the trial court's judgment and remand the cause for further proceedings in the interest of justice. *See In re Estate of McNutt*, 405 S.W.3d 194, 197 (Tex. App.—San Antonio 2013, no pet.) (noting appellate courts have broad discretion to remand a cause in the interest of justice); TEX. R. APP. P. 43.3.

Because we are reversing the trial court's judgment, we need not address Alaniz's complaint regarding the assessment of costs in the judgment. On remand, the trial court will need to re-address the issue of costs based on the outcome of the proceedings.

### CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings in the interest of justice.

Sandee Bryan Marion, Chief Justice