

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00751-CV

**IN THE INTEREST OF J.J.F.R., JR.** and G.L.R., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-01451
Honorable John Gabriel, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  July 20, 2016

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This is an appeal from the trial court's order dissolving an informal marriage between appellant and appellee.  On appeal, appellant, Juan C. Reyes, (1) challenges the denial of his motion for summary judgment and (2) asserts the evidence is legally and factually insufficient to support the existence of an informal marriage to appellee, Refugio Irene Renteria.  We affirm that portion of the trial court's order dissolving the informal marriage.  We reverse that portion of the order adopting and incorporating the property division contained in a prior decree of divorce and remand for further proceedings.

### APPELLANT'S MOTION FOR SUMMARY JUDGMENT

Appellant contends the trial court erred by denying his no-evidence motion for summary judgment.  A party cannot appeal the denial of a summary judgment unless (a) both sides moved

for summary judgment on the same issues and the trial court granted one motion for summary judgment and denied the other, or (b) a statute expressly permits appeal of the denial of the motion for summary judgment. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (6), (13) (West Supp. 2015). In this case, no statute authorizes an appeal from the denial of appellant's no-evidence motion for summary judgment, and only appellant moved for summary judgment. Importantly, the claim of whether an informal marriage existed was tried on the merits in a bench trial. In this situation, the denial of the motion for summary judgment is not appealable. *See Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 427 (Tex. App.—Texarkana 2008, pet. denied) ("Where a motion for summary judgment is denied by the trial court and the case is tried on its merits, the order denying the summary judgment cannot be reviewed on appeal."); *Anderton v. Schindler*, 154 S.W.3d 928, 931 (Tex. App.—Dallas 2005, no pet.) ("The denial of a motion for summary judgment when followed by a conventional trial on the merits does not finally decide any issue pending before the trial court; the denial of a motion for summary judgment presents nothing for review."). Therefore, appellant may not appeal the trial court's order denying his motion for summary judgment.

**EXISTENCE OF INFORMAL MARRIAGE**

Appellant asserts there is insufficient evidence of the elements necessary to show that he and appellee entered into an informal marriage.

## A. Applicable Law and Standard of Review

In Texas, "the marriage of a man and woman may be proved by evidence that . . . the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and [while in Texas] represented to others that they were married." TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2006). An informal marriage comes into existence when all three

elements are present. *Farrell v. Farrell*, 459 S.W.3d 114, 117 (Tex. App.—El Paso 2015, no pet.) ("An informal marriage does not exist unless all three elements are present."); *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("An informal marriage does not exist until the concurrence of all three elements."); *Winfield v. Renfro*, 821 S.W.2d 640, 646 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("Although the three elements that make up a common-law marriage may occur at different times, until all three exist, there is no common-law marriage."); *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.—San Antonio 1987, no writ) (all three elements must exist at the same time).

The existence of an informal marriage is a fact question, and the party seeking to establish the existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence. *Farrell*, 459 S.W.3d at 117; *Small*, 352 S.W.3d at 282-83. The elements of an informal marriage are determined on a case-by-case basis. *Farrell*, 459 S.W.3d at 117.

In this case, appellee was the proponent of the existence of an informal marriage and she had the burden at trial to prove the three elements by a preponderance of the evidence. Because appellant did not have the burden of proof at trial, on appeal we will reverse the trial court's order on legal sufficiency grounds if the evidence supporting the order could not "enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A finding is not reasonable if "(1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact." *Id.* at 809. We must "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827.

We may overturn the order on factual sufficiency grounds only if, after considering and weighing all the evidence, the findings supporting the order are "so contrary to the overwhelming weight of the evidence that they are clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury verdict. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review a trial court's factual findings under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Id.*; *Monroe v. Monroe*, 358 S.W.3d 711, 716 (Tex. App.—San Antonio 2011, pet. denied). As the fact-finder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819. The trial court may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713 (Tex. App.—San Antonio 2007, no pet.). We may not pass upon the credibility of the witnesses, or substitute our judgment for that of the trial court, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Under either standard, we defer to the credibility determinations made by the fact-finder (here, the trial court) and do not merely substitute our judgment for its. *See City of Keller*, 168 S.W.3d at 816-17, 819-20, 822 (legal sufficiency); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (factual sufficiency).

**B. Evidence Considered On Appeal**

As an initial matter, we must determine what evidence we will review to determine whether the trial court's findings and conclusion[1] that appellant and appellee were informally married are supported by the evidence.

On October 9, 2013, following a bench trial, the court signed a "Decree of Divorce and Order Affecting Parent-Child Relationship" ("the Divorce Decree"). The Divorce Decree ordered the couple divorced; dissolved their informal marriage; and included, *inter alia*, a parenting plan, a division of the marital estate (including jewelry), and a judgment in favor of appellee in the amount of $25,000. Appellant filed a motion for new trial on the ground that appellee failed to establish an informal marriage. The trial court granted the motion for new trial on January 14, 2014 "as to the issue of whether the parties were common law married."

A new trial before the bench commenced on August 11, 2015, at which time the trial court heard testimony from appellant and appellee, and admitted certain exhibits into evidence. On September 1, 2015, the trial court signed an order (1) decreeing the couple divorced and dissolving their informal marriage effective as of October 9, 2013 and (2) incorporating the terms of the October 9, 2013 Divorce Decree "for all purposes." Appellant's second motion for new trial was denied.

In this appeal, appellant and appellee both cite to records from hearings that occurred before the August 11, 2015 new trial. It is not appropriate for this court to consider any evidence not admitted at the August 11 new trial for the same reasons a trial court may not take judicial notice of testimony from a prior trial. *See Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (holding, it is "inappropriate for a trial judge to take judicial

---

[1] Contrary to appellant's contention on appeal, the trial court signed findings of fact and conclusions of law on October 5, 2015.

notice of testimony even in a retrial of the same case."); *see also Muller v. Leyendecker*, 697 S.W.2d 668, 675 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). "In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence." *Guyton*, 332 S.W.3d at 693; *see also Muller*, 697 S.W.2d at 675; *In re C.L.*, 304 S.W.3d 512, 514-15 (Tex. App.—Waco 2009, no pet.). "A trial judge may not even judicially notice testimony that was given at a temporary hearing in a family law case at a subsequent hearing in the same cause without admitting the prior testimony into evidence." *In re C.L.*, 304 S.W.3d at 515.

Here, none of the testimony or evidence from any prior proceeding was offered into evidence at the new trial. Because the trial court did not consider such testimony or evidence at the new trial, neither shall we on appeal. Therefore, we consider only the evidence admitted at the new trial.

## C. Evidence of an Agreement to be Married

The trial court found the parties separated and ceased living together as husband and wife in February 2009.[2] Appellant filed the underlying "Original Petition in Suit Affecting the Parent-Child Relationship" on January 31, 2012. In that petition, he did not request a divorce. On February 2, 2012, appellee filed a counter-petition in which she stated, she "intend[ed] to amend[] this Counter-Petition and seek divorce from" appellant. On February 22, 2012, appellee filed an amended counter-petition in which she alleged the existence of an informal marriage beginning in 1999 and she counterclaimed for a divorce from appellant.

When "a proceeding in which [an informal] marriage is to be proved . . . is not commenced before the second anniversary of the date on which the parties separated and ceased living together,

---

[2] On appeal, neither party challenges this finding.

it is rebuttably presumed that the parties did not enter into an agreement to be married." TEX. FAM. CODE § 2.401(b). Because more than two years elapsed from the date the parties separated and ceased living together to the date appellee sought to prove the existence of an informal marriage, appellee bore the burden to "produce sufficient evidence of an agreement to be married to rebut the statutory presumption . . . ." *Joplin v. Borusheski*, 244 S.W.3d 607, 611 (Tex. App.—Dallas 2008, no pet.).

To establish an agreement to be married, the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife, as opposed to a temporary cohabitation that may be ended by either party. *In Interest of C.M.V.*, 479 S.W.3d 352, 360 (Tex. App.—El Paso 2015, no pet.); *Small*, 352 S.W.3d at 283. A proponent may prove an agreement to be married by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). Proof of cohabitation and representations to others that the couple are married may constitute circumstantial evidence of an agreement to be married. *Russell*, 865 S.W.2d at 933; *In Interest of C.M.V.*, 479 S.W.3d at 360. However, the circumstances of each case must be determined based upon its own facts. *Id.*

Appellee testified she first met and started dating appellant when she was eighteen years old, "back in 1998, '99." The couple began living together in either late 1999 or early 2000. At the time, she did not know he was already married to another woman by the name of Nora. Appellant and appellee's first child was born on September 8, 2000. Appellee stated appellant asked her to marry him "somewhere in 1999," while the couple was expecting their first child. She testified they agreed to be married, appellant bought her an engagement ring, and she wore a wedding ring. Appellee stated appellant gave her an engagement ring because they "agreed to be married." Appellee identified a photograph taken of her and appellant in 2001 while the couple was in Las Vegas as depicting her wearing what she described as her engagement ring. Appellee

identified another photograph taken in 2001 as depicting her holding their son, and she said she was wearing her wedding band in the photograph. When asked whether the photograph of her and her son on its own proved she and appellant were married, appellee stated, "Yes. To me it does. It's showing how old my son is there, like we've been — we agreed to be — we agreed." Appellee continued: "[T]hat picture [was] taken in Vera Cruz. He went, he introduced me to his family as his wife. We were — I personally believed we were married. We were a couple. We were married. . . . ." Appellee identified a photograph taken of her and appellant in 2012 while the couple attended a retreat in California. In this photograph appellant is wearing a ring on his left hand ring finger; however, appellee did not identify the ring as a wedding ring.

Appellee said the couple had a joint bank account until either 2008 or 2009. She insisted she had "access" to the account, but could not remember whether the account was personal or business and she was unable to answer whether she was a joint owner of the account. When asked if she had "any piece of paper whatsoever that lists [her] and [appellant] as husband and wife," appellee responded, "I threw everything away. No. It's just rare that I kept some pictures for my kids. No."

On cross-examination, when asked if she had any certificate showing her to be formally married, appellee said, "No. It was just an agreement to be married. We agreed to be married." She could not remember the last time she wore her ring, but she stated she sometimes wore it after 2009. When asked whether the ring was a gift or whether appellant demanded that she wear the ring on her ring finger, appellee said, "It was just an agreement of love, like us agreeing to be married."

Appellee stated she discovered appellant was already married to Nora soon after her son was born in 2000. Asked if she could be married to appellant when he was married to someone else, appellee said," "Well, at the time, I didn't know. I mean, we just — it was a verbal agreement.

We agreed to be with each other and love each other. He gave me a ring. We just pursued that."

Appellee insisted she did not know when appellee divorced Nora. The following exchange then returned to the subject of appellee's ring:

> Q. Okay. He gave you a ring as a gift?
> A. It was a ring of — he proposed to me.
> Q. And you said no, didn't you?
> A. Obviously I said yes. I mean, I had the ring. I mean, we were together.
> Q. You never finalized the marriage?
> A. Years later, yes.
> Q. Where? Years later, when?
> A. Now. Like, we're dealing with it now, right?

Appellee was further questioned about when she was given the ring and whether she could be married to appellant while he was married to Nora. She answered, "Like, I was maybe two months pregnant when he proposed to me." When pressed on the date of her marriage to appellant, appellee responded, "I remember — how can I not remember when my first child is going to be born and they [sic] proposed to me and didn't want to marry me? That's something I would know." When asked again on what date she and appellant began to "allegedly live together as husband and wife," appellee responded:

> Again, I was pregnant. We were already living together. We were living in some apartment on Evers Road on 410, called Los Reyes or something like that. I do remember that. I was pregnant. I was — we moved in together. We were at some apartment together, yes.
> Q. So that's 1999?
> A. Roughly around there. My son wasn't born yet. I was pregnant. . . . .

The testimony of one of the parties to the marriage constitutes some direct evidence that the parties agreed to be married. *Small*, 352 S.W.3d at 283. In this case, appellee stated she and appellant agreed to be married sometime in 1999 while the couple was expecting their first child. Appellee also testified she and appellant began to live together as husband and wife "roughly around" 1999 before their son was born. Appellee's testimony is more than a scintilla of evidence that she and appellant agreed to be married and, therefore, legally sufficient to support the finding

that the couple agreed to be married. Therefore, we next address whether the evidence is factually sufficient to support the element that the couple agreed to be married.

Under a factual sufficiency review, we consider all the evidence, including contrary evidence. Evidence to the contrary is appellant's testimony that he married Nora in 1985 or 1986. He said he was neither living with nor divorced from Nora in 2000. He thought he filed for divorce from Nora in either 1999 or 2000, and their divorce was finalized "around 2003." He stated he told appellee he was married to, but separated from, Nora when he and appellee started dating. He said he told appellee he and Nora were getting divorced, but he insisted he did not ask appellee to marry him because he was already married. Appellant denied buying appellee the ring she identified as an engagement ring. He stated he did not buy appellee an engagement ring or wedding ring, the ring appellee is shown wearing in the 2000 photograph was not a wedding ring, and he did not buy the rings for her and did not know where she got the rings. He said the ring he is shown wearing in a photograph was not a wedding ring. He considered appellee to be his girlfriend, but not his wife. Appellant said he never told anyone in the United States that appellee was his wife. He said appellee never told him she wanted to be married to him and they never made plans to have a ceremony or marriage in the future.

Both parties admitted they did not have health or life insurance together.

Although the evidence is conflicting, it turns on the witnesses' credibility and demeanor, and therefore was within the trial court's purview to resolve. We cannot say the evidence of an agreement to be married is so weak as to be clearly wrong and manifestly unjust. We conclude appellee satisfied her burden to produce sufficient evidence of an agreement to be married to rebut the statutory presumption.

**D. Evidence of Living Together as Husband and Wife and Representing to Others as Being Married**

There is no dispute appellant and appellee lived together from at least early 2000 to 2009; however, because appellant was still married to Nora during a portion of this time, any "marriage" between appellant and appellee was void until appellant's marriage to Nora was terminated. *See* TEX. FAM. CODE ANN. § 6.202(a) (West 2006) (A "marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse."). The Family Code provides that the "later marriage that is void under this section becomes valid when the prior marriage is dissolved if, after the date of the dissolution, the parties have lived together as husband and wife and represented themselves to others as being married." *Id.* at § 6.202(b). Therefore, the informal marriage between appellant and appellee—if proved—became valid when appellant's marriage to Nora was dissolved "if, after the date of the dissolution," appellant and appellee "lived together as husband and wife and represented themselves to others as being married." *Id.* We must first address the question of when the marriage to Nora was dissolved.

At the new trial, appellant testified his divorce from Nora was finalized "around 2003." For the first time on appeal, appellee's counsel contends appellant's divorce from Nora was finalized on July 19, 2000. Counsel admits there is no support in the record for this date, but insists this court must consider that date as the date of the divorce because in appellant's brief on appeal, appellant's counsel stated, "On July 19, 2000, [appellant] finalized his divorce from Nora Reyes."

Texas Rule of Appellate Procedure 38.1(g) provides as follows:

> The [appellant's] brief must state concisely and without argument the facts pertinent to the issues or points presented. In a civil case, the court will accept as true the facts stated unless another party contradicts them. *The statement must be supported by record references.*

TEX. R. APP. P. 38.1(g) (emphasis added).

Unsupported statements in a brief cannot substitute for proof that could have been offered in the trial court. Here, counsel's statement in appellant's brief is not supported by the record—as conceded by appellee—and appellant's argument on appeal relies, in part, on his assertion that he was still married in 2000. Further, the only record evidence of the divorce is appellant's testimony at trial that he filed for divorce from Nora in either 1999 or 2000, and his divorce from Nora was finalized "around 2003." A finding that appellant's divorce from Nora occurred in 2003 is consistent with the trial court's finding that appellant and appellee's informal marriage came into existence as of January 1, 2004.[3] *See Caddel v. Caddel*, 486 S.W.2d 141, 145 (Tex. Civ. App.—Amarillo 1972, no writ) (statute providing informal marriage becomes valid when prior marriage is dissolved "is clearly intended to apply prospectively from and after the time of the dissolution of the prior marriage"). Therefore, we begin with January 1, 2004 to address the next question of whether there was sufficient evidence to support a finding that the parties lived together and represented to others that they were married after that date.

It is undisputed appellant and appellee were living together on January 1, 2004 and continued to live together until February 2009. The trial court found appellant and appellee separated and ceased living together as husband and wife in February 2009, a finding neither party disputes on appeal.

We must next address whether appellant and appellee held themselves out as married after January 1, 2004. In addition to the evidence the trial court considered on whether there was an agreement to be married, appellee stated that she, appellant, and "[a] group of friends" went to a retreat in California for marriage counseling in 2008. Appellee was shown a photograph from the retreat that depicted her sitting and—according to appellee—showed appellant on his knees

---

[3] Appellee does not challenge this finding on appeal.

proposing to her. Appellee said appellant gave her "an upgraded diamond" ring at the retreat. She stated the proposal was in connection with the marriage counseling. When asked why appellant was proposing to her, appellee responded, "Just to refresh our vows of being together." She said she and appellant had been having marital problems before the retreat and the proposal helped "[t]o some point."

When asked about federal tax returns, appellee said appellant's bookkeeper prepared the returns for appellant's business and for her "when he added me on there."[4] In 2010, appellee filed a criminal complaint against appellant, and she stated she told the police that appellant was her husband.

We conclude this evidence is legally sufficient because it is more than a scintilla of evidence that appellant and appellee lived together as husband and wife and represented themselves to others as being married.

Under a factual sufficiency review, we consider all the evidence, including contrary evidence. Appellant testified the 2008 California retreat was not a marriage retreat because they went as a couple and not everyone at the retreat was married. He said the retreat lasted about one week and everyone discussed problems couples had. He said he was invited to the retreat by a friend who told him the retreat was about "making things work for the kids." He denied the husbands were asked to reaffirm their marriage at the end of the retreat, and the photograph of him

---

[4] Over appellant's objection, the trial court admitted into evidence a federal tax return from 2008 that showed the "filing status" as "married filing jointly (even if only one had income)." On appeal, appellee relies on this return as evidence of representing to others that they were married. Although appellant does not raise a specific challenge to the trial court's ruling on admissibility, appellant asserts the return should not be considered in a sufficiency review because the return is not signed and there is no evidence the return was ever filed with the IRS. Regarding the information he provided to the bookkeeper, appellant testified he "would take all the papers to [the bookkeeper] that the bank gave me, the deposits, because I'm incorporated as Reyes Concrete Works, Inc." He denied telling the bookkeeper he and appellee were married. Appellant insisted he cannot speak English well, and he did not know the bookkeeper had checked the "married filing jointly" box. We need not decide whether the return should be considered in a sufficiency review because other evidence in the record supports a finding of holding out as a married couple.

on his knees showed him "telling [appellee] to have [sic] another chance due to the children." He denied buying her a bigger engagement ring, and he said the ring shown in the photograph with him on his knees was a gift. Appellant stated he did not try to get appellee to return to the house after they separated, and she never came back to live at the house, although she occasionally came over to visit but she always returned to her own house.

Appellant admitted a bookkeeper prepared the tax returns for his company, Reyes Concrete Works, Inc., and his and appellee's personal taxes in 2007 and 2008. However, he denied telling the bookkeeper he was married to appellee. Appellant testified he and appellee did not have a joint bank account and she did not have authority to sign his checks.

Although the evidence is conflicting, it turns on the witnesses' credibility and demeanor, and therefore was within the trial court's purview to resolve. We cannot say the evidence that appellant and appellee "lived together as husband and wife and represented themselves to others as being married" is so weak as to be clearly wrong and manifestly unjust.

### E. Conclusion

We conclude the evidence is sufficient to support the trial court's finding that appellant and appellee entered into an informal marriage that became valid on January 1, 2004.

### PROPERTY DIVISION

Appellant asserts, and appellee does not dispute, that the property division contained in the October 9, 2013 Divorce Decree was based on an informal marriage beginning on August 31, 2000. Following the new trial, the trial court determined the informal marriage began on January 1, 2004 because an impediment existed to the validity of any informal marriage prior to appellant's 2003 divorce from Nora. However, at the new trial, the trial court did not reconsider the property division based on the new inception date of the informal marriage. Instead, the trial court adopted and incorporated the October 9, 2013 Divorce Decree "for all purposes."

In his second issue on appeal, appellant asserts that the discrepancy in the beginning dates of the informal marriage means the trial court awarded appellee a portion of appellant's separate property. We agree that any property awarded to appellee based on an inception date before January 1, 2004 may have divested appellant of his separate property.[5] Because the date on which the parties were married may have materially affected the just and right division of the community estate, we must remand for a new division of the community estate.

## CONCLUSION

For the reasons stated above, we reverse the portion of the trial court's September 1, 2015 Order concerning the division of the marital estate and we remand to the trial court for a new trial on the division of the marital estate. The remainder of the order is affirmed.

Sandee Bryan Marion, Chief Justice

---

[5] Our agreement should not be interpreted as a holding that appellant's separate property was, in fact, actually awarded to appellee.